HARRY H. TANTUM, complainant,

*v.*

ANNA KELLER, defendant.

[Decided January 9th, 1924.]

</div>

1. Lease-contract, giving lessee "first privilege to purchase," examined and construed in the light of the entire instrument as giving lessee an absolute right or option to purchase at his election and as not limiting such right to lessee personally.

2. Ordinarily such option in a lease is assignable, and passes with an assignment of the lease.

3. Purely personal contractual rights are "non-assignable" only in the sense that they may not be assigned against the will of the other contracting party.

On final hearing.

*Mr. Cassel R. Ruhlman,* for the complainant.

*Mr. James J. McGoogan,* for the defendant.

BUCHANAN, V. C.

Defendant, being the owner of certain premises situate in the city of Trenton, leased the same for a term of five years, from January 1st, 1919, to Nathan Krupnick. The latter subsequently assigned the lease to Morris Horowitz, and he in turn to complainant. Written consent to each assignment, although not required by the terms of the lease, was in fact given by defendant, and the latter duly recognized complainant as tenant under the lease and thereafter accepted from him the rents reserved thereby.

The lease contained a clause or provision which is interpreted by complainant as an option to purchase. If it be such option, and exercisable by him (which are the matters in dispute), he has duly elected to exercise it, duly notified complainant of such election and tendered full performance on his own part, and defendant has refused to convey; wherefore complainant seeks a decree for specific performance.

The defenses interposed are purely legal—first, that the clause in question is not an option,. is not an irrevocable offer to sell which matures into. a legal obligation upon the election of lessee and tender of performance by him, but is instead a promise or obligation not to sell to anyone else without first offering to sell to the lessee; and second, that whatever right or interest enured to the lessee, by reason of this provision, was purely personal in the lessee, not assignable, and hence not now inherent in complainant. (A third defense is set up in the answer, but it is without merit and was abandoned at the hearing.)

The clause, the interpretation whereof is in dispute, reads as follows:

"First privilege is extended to the said party of the second part to purchase said property at any time during this lease term at a price of fifty-five hundred dollars, size of lot 26.6' x 100', more or less."

It may be conceded that to one accustomed to legal nicety in the choice of words there is a distinct difference in' definition between "privilege" and "right"; nevertheless, the

two words are commonly used interchangeably as synonymous, not only amongst laymen, but by lawyers, and, indeed, not infrequently, it must be admitted, even in judicial opinions.

That the word "privilege" (if standing by itself), when used in such a provision as the one under consideration, is to be interpreted as equivalent to "right," is not open to question, I take it, in view of the decisions in *Hawralty* v. *Warren, 18 N. J. Eq. 124; Charles J. Smith & Co., Inc.,* v. *Anderson, 84 N. J. Eq. 681,* and *Behr* v. *Hurwitz, 90 N. J. Eq. 110.* Defendant in fact has not argued to the contrary.

Nor has she raised any issue as to the meaning of the word "extended," which also is technically ill-chosen in the present instance, but which in common parlance is used with great frequency in conjunction with the word "privilege." Clearly, it must here be interpreted as equivalent to "given."

Her argument is rested upon the fact that that which is extended or given to the lessee is not "the privilege" to purchase, but "first privilege" to purchase, and upon the cases of *Holloway* v. *Schmidt, 67 N. Y. S. 169; Walsh* v. *Fort Schuyler Brewing Co., 146 N. Y. S. 160; Hill* v. *Prior (N. H.) 106 At. Rep. 641; Cloverdale* v. *Littlefield, 133 N. E. Rep. 565,* and *Reed* v. *Campbell, 43 N. J. Eq. 406,* cited in support of the proposition that when the words "first privilege" or "first right" are used, the lessor's intent must be deemed to have been not the creation of a positive obligation upon himself to convey, at the election of the lessee, but a negative obligation—to convey to no one else unless lessee should be unwilling to purchase on the same terms. These cases (except the last named) are all lease cases involving clauses giving lessee the "first privilege" or "first right" to a renewal or second lease, and hold that the lessee is not given an absolute right to such renewal, but only a right to the first opportunity to renew if the landlord is then willing to lease to any one; that such is the necessary meaning if any force and effect is to be given to the word "first." (In *Reed* v. *Campbell, supra,* the clause was "first right to lease the said premises for the next succeeding year or years"—but

the meaning of "first right" was not decided, the case being disposed of on other grounds.)

Upon the facts as stated in the opinions in the four cases just mentioned, I see no reason to differ from the conclusions therein reached. Indeed, my impression at the oral argument in this case was that the words "first privilege" must here be similarly construed. Consideration, however, leads me to a different result. The facts in the present case are different; it is a right or privilege of purchase, not of renewal of lease, and the additional language in the clause seems to me to be of controlling significance.

The most significant thing I deem to be the fixing of the price. The fact that the clause is in the lease at all (whichever way it be construed) shows that the lessee had wanted an option—an absolute right to purchase. Construed as such option, the fixing of the price and all the rest of the paragraph is perfectly natural and proper. But construed as a mere conditional right, it follows that the lessor was unwilling to give the option or absolute right, and we have this situation—that an owner who was unable or unwilling to decide then and there whether or not she would be willing to sell at all during the next five years for a certain fixed price, was, nevertheless, able and willing to decide that if, during the next five years she did desire to sell, she would sell at that certain fixed price. Such a situation is possible, but to my mind is highly improbable. Since she would not bind herself to sell, why should she bind herself to a price when conditions might change materially in five years? The natural and probable thing under those circumstances would be to agree to give the lessee the first opportunity to buy at the price and terms she should then be willing to take from anyone else.

So, also, is the fixing of the size of the lot significant. It is an essential of a contract of sale that the premises be definitely described, and this description had been left rather indefinite in the lease itself, which referred to the subject of the demise as buildings.

Again, the lessee is to have the "first privilege" to purchase the property *"at any time"* during the five-year term. These words are much more consonant with the idea of an absolute right than a conditional right. Indeed, the more the entire paragraph is considered, the more apparent does it become that everything in it—except only the word "first" —indicates that an option was intended thereby to be granted, rather than a mere privilege or conditional right.

The presence of the word "first," however, is far from conclusive against the interpretation of an option or absolute right. At most, even if to arrive at that interpretation we have to discard "first" as mere surplusage (which to my mind is not necessary), it creates, as against the remainder of the language in the paragraph, merely a doubt, an ambiguity. And in such case, applying the rule of adopting the construction which is less favorable to the grantor, we reach the result of determining the clause to grant an option.

Moreover, if we assume "privilege" here to mean "option," the word "first" is of no more significance than it is when the words "first option" are used, as is not infrequent. See, for instance, the language of the clauses *sub judice* in *Whitson* v. *Adams*, *93 N. J. Eq. 456*, and *Kastens* v. *Ruland, 94 N. J. Eq. 451; 1 N. J. Adv. R. 320.*

As I have said, I do not think it necessary to regard "first" as surplusage. In the cases where the words "first option" or "first right," or equivalent terms are used, I think it very likely, or at least very possible, that the parties thereby had reference to the contingency of an offer by a third party to purchase at the agreed price prior to the expiration of the term, and that in such an event the lessee would have the right or option to purchase, but it would be a "first" right or "first" option, and that he could be called on then and there to make his election whether to purchase or not. (I do not, of course, mean to be understood as being of opinion that this language is apt to express such supposititious intent, or that it would be so construed if that particular question were the issue before the court.)

The remaining question, as to the assignability of the option, may be more speedily dealt with. Defendant does not deny that ordinarily an option to purchase is assignable, nor that it ordinarily passes with an assignment of the lease wherein it is contained. *Charles J. Smith Co.* v. *Anderson, 84 N. J. Eq. 681.* Her intention is that if the instrument shows that the privilege or option was intended to be confined personally to the lessee, then it is not assignable, and does not pass by assignment of the lease; and that in the present instance the lease shows that it was intended that the right or option was confined to the lessee personally.

Neither of these premises is true. When it is said that certain contractual rights are purely personal and not assignable, all that is meant is that they are not assignable against the will of the other party; that the latter cannot be compelled without his consent to accept the substitution of a stranger as a party to the contract, in the place and stead of the particular person with whom, and with whom only, he intended and was willing to enter into the contract. *With his consent* such contracts are assignable, and may be, and often are, assigned. See *5 C. J. 884 § 49; 2 R. C. L. 602 § 11.* I do not understand the law in this state to be otherwise. Our adjudications do not hold that a purely personal contract is not assignable if the other party assents, but indicate their so-called non-assignability consists simply of the right of the other contracting party not to be compelled against his will to accept the substitution of a stranger in the place of the particular person with whom he has contracted. *Cf. Schlessinger* v. *Forests Products Co., 78 N. J. Law 637; Wooster* v. *Crane & Co., 73 N. J. Eq. 22* (at p. 25.)

Admittedly, in the present case, the defendant gave written consent to the assignment by the original lessee to complainant's assignor, and to the assignment by the latter to complainant. However, neither the language of either of these consents, or of either of the assignments, appears in evidence, so that we are unable to determine whether (if the option were to be construed a purely personal right) the con-

sents comprehend the assignment of the option as well as of the lease.

But the option is not in this case purely personal. Ordinarily it runs with the land and passes with an assignment of the lease—*vide* the *Smith Case, supra;* also *Hollander* v. *Central Metal Co., 71 Atl. Rep. 446.* That upon which defendant relies in the instant case to take it out of the general rule, is that the demise in the lease is to "the party of the second part, *his heirs or assigns,*" whereas the grant of option is only "to the said party of the second part," and hence, it is argued, is meant to enure solely to him personally. To this it is sufficient answer to point out that the contract was obviously drawn, not by counsel learned in the law (as indeed is evidenced by having the demise, which is personal property, run to lessee's *heirs*), but by a layman with a smattering of knowledge of legal forms and phraseology, and, further, that if defendant's argument be accepted as sound, then it logically follows that every other covenant in the contract was intended to enure to, and be binding upon, only the respective parties personally, and that it was also intended that the term should be cut short by the prior death of the lessor—for the instance specified is the sole instance in the entire document where such additional words are used to qualify or augment either party.

Complainant is entitled to the decree sought.