ROBERT A. GOODALL, APPELLEE, V. W. T. STANOSHECK ET AL., APPELLEES: THOMAS I. DUTCH, INTERVENER, APPELLANT.

FILED NOVEMBER 20, 1936. No. 29752.

*Beeler, Crosby & Baskins,* for appellant.

*Brome & Thomas, G. H. Seig, Hubka & Hubka, Rinaker & Delehant* and *M. S. Hevelone, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MUNDAY, District Judge.

DAY, J.

This is a suit for specific performance of an oral contract between Goodall and Stanosheck and the State Bank of Odell for the delivery of certificates for bonds of the Duchess Hotel Company. An injunction was also sought enjoining the defendants from transfering the certificates to any other person. Dutch intervened and claimed to be the owner of five of the certificates, subject to a lien of Stanosheck.

The bank owned five certificates for bonds of the face value of $5,000. The plaintiff alleges that he contracted with Stanosheck as cashier of the bank for the purchase of these certificates. This contract was never approved by the board of directors of the bank, and the trial court held that the plaintiff was not entitled to specific performance as to these certificates. There is no appeal from the judgment in this respect, so we need not concern ourselves further with that phase of the case.

The court decreed specific performance against Stanosheck for five certificates of the face value of $5,500. The intervener, Thomas I. Dutch, appeals from this part of the judgment. The intervener and his wife, Bess W. Dutch, were the owners of a hotel at Ogallala. They executed a trust deed and named Clarke, Lewis Investment Company as trustee. A suit to foreclose the trust deed was started upon 21 bonds of the total face value of $20,500, and the trustee became a depositary for the outstanding bonds and issued depositary certificates to the holders. While the foreclosure suit was pending, on August 30, 1934, the plaintiff negotiated with Stanosheck for the purchase of the certificates in question. At the time of the negotiation, Stanosheck did not own the certificates but was able to acquire them, and Goodall paid the agreed price of $2,750. Stanosheck acquired the certificates, but in this suit claims that he acquired them, not with Goodall's money, but with his wife's money over which he had control. This is a brief resumé of the transaction, omitting some of the details.

Dutch in his petition of intervention claimed the ownership of the certificates for the reason that he had caused the owners of the certificates to forward them to the bank with sight drafts for a specified amount to be delivered to him at an agreed price. He further claims that Stanosheck did not have any contract or agreement with the owners to purchase the same. He alleges in his petition that as early as the 15th of May, 1934 (and the evidence indicates that it was in April), he negotiated with Stanosheck to advance the money as a loan to purchase these certificates, and that

these certificates were purchased by Stanosheck for him pursuant to the agreement.

The only issue before this court in the present state of the record is the ownership of these certificates. Did Dutch or Stanosheck own them, or did Dutch have any rights in them superior to the right of Goodall or Stanosheck?

In the first place, it is necessary to determine if the intervener, Dutch, had acquired any rights to these certificates. According to the record, Dutch interviewed Stanosheck in the latter part of April, 1934, for the purpose of interesting Stanosheck in financing his hotel which was being foreclosed upon by the bondholders. It seems to have been the understanding after that interview that Dutch would call upon the bondholders and have *all* the certificates sent to the bank, and that Stanosheck would then see what amount it would take to purchase these certificates and finance the property. Dutch claims that, as a result of this conversation he wrote or called upon the owners of all the certificates in controversy, and that these five certificates of the face value of $5,500 were forwarded to the bank with sight drafts in payment thereof at the rate of 50 cents on the dollar, which would total $2,750. These were not all of the outstanding certificates and were the only ones which were sent in to the bank under this arrangement. Definitely, the evidence is that Stanosheck never agreed to advance any money until all of the certificates were collected so that he could know how much it would require to finance the hotel.

These certificates came to the bank with sight drafts as early as June, 1934, and they remained in the bank for collection without Dutch's making any payment or any arrangement for credit to pay these sight drafts prior to August 30, 1934, upon which date Stanosheck negotiated with Goodall. Goodall paid Stanosheck $2,750 for these certificates. Immediately thereafter Stanosheck took up these drafts and remitted to the owners of the certificates the amount thereof, using money from an account of his wife's over which he exercised control and from which he was

accustomed to make investments. Soon thereafter this controversy arose, and Stanosheck refused to deliver the certificates to Goodall, but tendered a return of the money which was refused.

About September 10 Dutch sent Stanosheck three certificates and one bond of the face value of $4,000, which he had procured as collateral. He also sent him a fire insurance policy on the hotel with a mortgage clause with loss payable, if any, to the bank. It is contended that this completes the transaction for a loan from Stanosheck to Dutch for the purchase of these certificates. However, the conclusion is inevitable that at the time Stanosheck acquired these certificates they were not acquired under any agreement to loan Dutch the money to pay for them. The money was remitted by the bank with letters signed by Stanosheck which contained statements of which the following is typical: "The original prospective purchaser of these bonds (or certificates) failed to raise the funds & meet the requirements, hence the delay in closing this transaction as we advised some time back—a Mr. Goodall of the same city has provided the funds & authorized remittance. Please confirm and forward the last two above mentioned certificates at your earliest convenience." This is significant inasmuch as Stanosheck indicates at least a mild disposition to support the claim of the intervener.

The record presents only a question of fact in the case and that not difficult of determination. The intervener, Dutch, did not make a definite arrangement for the purchase of these certificates, and they were not purchased by Stanosheck upon Dutch's credit; Stanosheck acquired them with his wife's funds, acting as her agent, and entered into a valid oral contract for the sale of the certificates to Goodall.

These certificates representing the bonds were not procurable on the open market and had no market value. They had a special value to the plaintiff as well as the intervener. A contract for the sale of securities which are not procurable upon the market and have no market value may be

specifically enforced. *Cole v. Cole Realty Co.*, 169 Mich. 347, 135 N. W. 329; *Hirschman v. Casey*, 121 Neb. 471, 237 N. W. 584.

This was the finding of the trial court which is approved.

AFFIRMED.