Lancaster Malleable Castings Co. *v.* Dunie, Appellant.

Argued April 18, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*Morris Wolf,* with him *Abraham L. Freedman, Alexander T. Stein* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*F. Lyman Windolph,* with him *Martin M. Harnish,* for appellee.

OPINION BY MR. JUSTICE JONES, May 22, 1950:

This case involves the construction of a provision in a written lease, conferring on the lessee "the first option and privilege" of purchasing the leased property "at any time" up to within six months of the expiration of the term of the lease at a specified price with a certain condition as to the lessor's receipt of a bona fide third-party

offer for the property at the option price or more. The lease was for a term of five years from December 1, 1945.

The option provision, in its entirety, reads as follows:

"8. Tenant shall have the first option and privilege of purchasing leased premises at any time before June 1, 1950, at the price of fifteen thousand dollars ($15,-000.00), under the following terms and conditions:

"If at any time prior to June 1, 1950 Landlord receives a bonafide offer of fifteen thousand dollars ($15,-000.00) or more for said leased premises, from any person or corporation other than Tenant, Landlord shall give notice in writing to Tenant of said offer, and said Tenant shall have the privilege, at any time within sixty days of time of receiving said written notice, of purchasing leased property for fifteen thousand dollars ($15,000.00); provided, however, that if Tenant should refuse to accept and purchase property for fifteen thousand dollars ($15,000.00), and for any reason whatsoever sale to other party should not be consummated, then and in that event the option to Tenant, as herein agreed upon, shall continue, in the same manner as if no offer had been made, until June 1, 1950. It is expressly agreed and understood between the parties hereto that if said property should be sold as aforesaid to any person or corporation other than Tenant, during the term of this lease, that the said sale shall in no way affect this lease and any sale made must be made subject to the terms of this lease, and the lease shall continue for the full term as herein agreed upon."

On October 20, 1948, the lessee notified the lessor in writing of its election to exercise the option on November 1, 1948. The lessor responded on October 26, 1948, also in writing, refusing to convey the property to the lessee under the option. The lessee thereupon instituted the present suit to compel the lessor's specific perform-

ance of his agreement to sell as effectuated by the plaintiff's exercise of the option. Preliminary objections by the defendant to the bill were overruled; and the defendant answered to the merits. A hearing was had in due course and the chancellor entered an adjudication and decree *nisi* awarding the property to the plaintiff at the stipulated option price of $15,000. Exceptions by the defendant were overruled by the court en banc which entered a final decree, substantially in the terms of the decree *nisi*. This appeal by the defendant followed.

The learned court below construed the option provision to mean that the lessee had an absolute right to purchase the premises for $15,000 *at any time* up to June 1, 1950, save for the time being accelerated if a third-party offer for the property at the option price or more was made in the interim. However, no such outside offer was received. We think the construction so put upon the provision in question is correct. The interpretation advocated by the defendant fails to give appropriate effect to the terms employed by the parties to express their intent.

The appellant's contention is based upon an assumption that the option was conditional (1) on the landlord's willingness to sell and (2) on the landlord's receipt of a bona fide third-party offer for the property at the option price or more. The interpolation of neither condition is warranted. The appellant argues that the suggested circumstance as to the landlord's willingness to sell derives by legal implication from the word "first", used to describe the "option and privilege". No appellate court decision of this State, either creating or approving any such rule of interpretation, has been brought to our attention; nor have we found any. What the ordinal was used to correlate in this instance was the fact that, by a later provision, the lessee's option or privilege might be lost during its specified term, in which event the right to acquire the property by purchase would pass to an-

other. The use.of the word."first" may not have .been happy. But,.the unnecessary or inartistic employment of more or less technical terms in.the drafting of legal documents is by no means rare and, certainly, the indulgence should not be permitted to overcome the intent of the parties as evidenced by their writing as a whole. What was said by Mr. Justice POTTER for this court in *Stetler v. North Branch Transit Company,* 258 Pa. 299, 301, 101 A. 980, is apposite here—"The expression ['first privilege'] is awkward and perplexing, but we think it is more consistent with the expressed purpose of the lease to hold that the renewal *was dependent upon the desire of the lessee;* and that the expression of that desire was to give to it the first privilege of re-leasing, that is, priority of privilege over any one else. The thought was not well expressed, but we feel that *the words 'first privilege' in this connection should not be so construed as to nullify a valuable right in the hands of the lessee, which, under the paragraph as a whole, was evidently intended to be created"* (Emphasis supplied). See also *McDonald v. Karpeles,* 61 Pa. Superior Ct. 496, 498. It is true that the "first privilege" in the *McDonald* and *Stetler* cases, supra, related to the lessees' renting for a further term. But, it is not unimportant that the term "first privilege" in those cases was not construed as arbitrarily imputing a condition requiring the landlord's assent. Many, if not most, of the cases cited from outside jurisdictions, involving a construction of the term "first privilege", likewise relate to lease renewals.

The cases where the "first privilege" relates to a tenant's right to purchase the leased property are relatively few. But, among those, the one that comes closest to the present on its facts is *Tantum v. Keller,* 95 N. J. Eq. 466, 123 A. 299, 300, where the lease contained the following strikingly similar provision: *"First privilege* is extended to the said party of the second part [the lessee] to purchase said property *at any time* during this lease

term at a price of fifty-five hundred dollars, size of lot 26.6′ x 100′, more or less" (Emphasis supplied). The cogent reasoning of the learned Vice Chancellor in concluding that that provision conferred upon the lessee an absolute and not a conditional option to purchase justifies quotation therefrom at length: "The fact that the clause is in the lease at all (whichever way it be construed) shows that the lessee had wanted an option—an absolute right to purchase. Construed as such option, the fixing of the price and all the rest of the paragraph is perfectly natural and proper. But construed as a mere conditional right, it follows that the lessor was unwilling to give the option or absolute right, and we have this situation: That an owner, who was unable or unwilling to decide then and there whether or not she would be willing to sell at all during the next five years for a certain fixed price, was nevertheless able and willing to decide that if, during the next five years, she did desire to sell, she would sell at that certain fixed price. Such a situation is possible, but to my mind is highly improbable. Since she would not bind herself to sell, why should she bind herself to a price when conditions might change materially in five years? The natural and probable thing under those circumstances would be to agree to give the lessee the first opportunity to buy at the price and terms she should then be willing to take from any one else."

The appellant's argument wholly ignores the fact that the lessee's option and privilege was to purchase the leased premises *at any time* before June 1, 1950. How, it may be asked, could the lessee exercise that privilege, *at any time* within the specified period, if the landlord's willingness to sell was additionally required? As was recognized in *Tantum v. Keller*, supra, at p. 301 of 123 Atlantic,—"These words ['at any time'] are much more consonant with the idea of an absolute right than a conditional right."

The case of *R. I. Realty Co., Inc., v. Terrell,* 254 N. Y. 121, 172 N. E. 262, which the appellant cites in support of his proposition that a "first privilege" to a lessee to purchase the leased property implies as a matter of law that the exercise of the option is dependent on the landlord's willingness to sell, is not in point. In the *Terrell* case, supra, the "first privilege" was but a bald option to buy the leased property at a named price but, notably, without express leave to the lessee to exercise the option "at any time". And, the same is true of *Koppi v. Gallagher,* 133 Misc. 79, 230 N. Y. S. 680. In *Reichman v. Fisher,* 60 D. & C. 673, which the appellant stresses as the Pennsylvania case most nearly in point with the present, the lessee had no more than a "First Option on buying the property at Six Thousand Dollars" which, of course, was subject to the lessor's willingness to sell. That lessee, likewise, did not have a right to exercise the option "at any time". As in the *Terrell* and *Koppi* cases, supra, those words do not appear in the option in the *Reichman* case.

The second condition advanced by the appellant, namely, that the lessee's exercise of the option to buy was conditioned upon the landlord's receiving a bona fide offer from a third party at the option price or more, is equally untenable. The doubt which the appellant strives to inject with respect to the quality of the option conferred on the lessee by the first clause of paragraph 8 of the lease rests upon no more than the draftsman's ill-considered use of the word "under" instead of "subject to" in introducing the subordinate "following terms and conditions". The purpose of the provision concerning the possibility of a third-party offer for the property was not to take away the lessee's absolute right to exercise its option "at any time" but was merely to accelerate the time within which the option would have to be exercised if the landlord received an outside offer for the

property at the option price or more. In short, the subordinate provision was designed to prevent a situation where the landlord might lose entirely a sale of the property if he received a third-party offer for it at the option price or more and the lessee declined, then and thereafter, to exercise its option which had until June 1, 1950, to run. Incidentally, the requirement that the lessee exercise its option, if at all, within sixty days of notice of the lessor's receipt of a third-party offer for the property at the option price or more presupposes the lessor's willingness to sell the property "at any time" within the designated four and a half year option period for $15,-000.

The decree is affirmed at the appellant's costs.