## Bear v. Stegkamper

*Samuel Orr, IV,* for plaintiff.
*George H. Rowley,* for defendants.

ACKER, J., March 22, 1974.—The matter for determination arises from a preliminary objection in the nature of a demurrer and, in the alternative, a motion for a more specific complaint. The action is in assumpsit, arising from a first refusal unilateral commitment by defendants to plaintiff for their stock in Stegkamper Motors, Inc. Defendants own 68 percent of the stock of Stegkamper Motors, Inc., an automobile agency in Hempfield Township, Mercer County, Pa. Paul Stegkamper and Carol Gosnell each own 16 percent of the remaining 32 percent of the stock. Stegkamper Motors, Inc., is the owner of a Ford Motor Company franchise.

On July 15, 1968, plaintiff entered into what is captioned a "stock option" agreement with defendant. Therein it is recited that defendants each own 3,381 shares of the total 9,604 shares, which were issued and outstanding of common stock of Stegkamper Motors, Inc. In addition, that the stockholders are convinced that the employment of plaintiff as vice president and general manager to manage the business of the company will be to the best interest of the company and the stockholders. As a special inducement to plaintiff to do so, defendants, as stockholders, contract that ". . . neither of them will sell any of their stock in the company unless and until they have first offered, in writing, to sell such stock to the manager (plaintiff) at the same price and on the same terms as they can sell it to any other party, which offer to the manager shall remain open for acceptance by them for at least thirty days."

Further, the agreement recites that the option will terminate in the event of the termination of manager's employment by the company. However, if that occurs, he shall have 60 days thereafter to purchase any of the stockholders' stock for the price and on the terms

mutually agreed. If not mutually agreed, the parties shall request the Ford Motor Company to appoint a qualified representative of that company to appraise and affix the fair market value of the stockholders' stock and the manager shall then have 30 days after receipt of such appraisal to purchase any or all of the stock at the appraised price. Each of the defendant-stockholders declared to be legally bound. Each signed the agreement under seal.

The complaint recites that, in an effort to avoid the stock option agreement, Stegkamper Motors, Inc., recently transferred all of its interest in the Ford dealership, together with the business directly or indirectly associated therewith, to a Mr. Joseph Mullaney and that defendants either effected or are in the process of effecting the dissolution of Stegkamper Motors, Inc. This, plaintiff claims, has operated to deprive the "stock option" of any value. Further, that defendants at no time ever complied with the terms of the stock option by giving any indication of a desire to sell the stock or offering it to plaintiff. It is claimed that on September 5, 1973, one of the defendants, Herman F. Stegkamper, unsuccessfully attempted to secure plaintiff's signature on a cancellation of the stock option agreement, representing casually that it was something routine that needed plaintiff's signature. Plaintiff alleges that from 1968 the net profits of the corporation as a result of his efforts increased $3,752.20 to $20,748 in 1972, after deductions by one or both of the defendants of substantial salaries and bonuses. Plaintiff, in 1972, was paid a base salary of $7,200, plus other compensation of $8,000 or a total of $15,200, but, since the sale, plaintiff has been relieved of his position and, at the time of the complaint, was engaged as a salesman for the same

company on commission, making approximately $6,000 per year.

The demurrer contends that a cause of action, upon which relief could be granted, is not to be found in the complaint because defendants did not sell their stock, that plaintiff did not allege that he wished or was able to exercise the option to purchase the stock and plaintiff's claim for compensation is not legally permissible. As to the latter, plaintiff alleges that if defendants had fulfilled their obligation, he would be entitled to 68 percent of the net profit and, as majority stockholder, the right to continue in his capacity as general manager to receive a reasonable salary therefrom. Being 50 years of age and in good health, actuarially he has a life expectancy of 23 years. However, he claims damages until he would become age 65 of at least $9,000 per year which he reduces down to its present worth. He also claims 68 percent of the projected net annual profits until he would attain the age of 65 reduced to its present worth, which brings him to a total claimed damage of $675,800 plus interest at the lawful rate.

*Did the sale of the assets by the corporation constitute a breach of defendant's contract giving plaintiff the right of first refusal as to defendants' stock?*

Although the unilateral agreement is captioned a "stock option," the parties both agree that it is a right of first refusal, also referred to as a conditional option or a resumptive right.[1] This is the only point of agreement of the parties.

---

[1] Gateway Trading Company, Inc. v. Children's Hospital of Pittsburgh, 438 Pa. 329, 335, 265 A. 2d 115 (1970).

In construing such agreements, established rules of construction must be considered. They are: (1) the entire contract should be read as a whole and every part interpreted with reference to the whole so as to give effect to its true purport; (2) the contract must be read in the light of the circumstances under which it was made and it is necessary to consider the situation of the parties at that time; (3) the necessities for which the parties naturally provided, the advantages each probably sought to secure and the relation of the properties and rights in regard to which they negotiated; (4) specific provisions ordinarily will be regarded as qualifying the meaning of broad general words in relation to a particular subject; (5) unless contrary to the plain meaning of the contract, an interpretation given by the parties themselves will be favored.[2]

Further,

"It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it."[3]

The parties have arrived at diametrically opposite conclusions in their interpretation of the "stock option." Defendants contend that because they contracted only as to their shares of stock in the corporation, which they have not attempted to sell to anyone, they have not violated their agreement.

Plaintiff contends that defendants have sold the majority if not all of the assets of the corporation and

---

[2] Pritchard v. Wick, 406 Pa. 598, 178 A. 2d 725 (1962).

[3] N. D. Ivey Company v. Franklin Associates, Inc., 370 Pa. 225, 231, 232, 87 A. 2d 236 (1952).

that they have made the "option" agreement a hollow promise and circumvented its true meaning.[4]

Voluntary dissolution can be accomplished only through the affirmative vote of at least a majority of the stockholders entitled to vote.[5]

Where a corporation sells or exchanges all, or substantially all, of the property and assets of the corporation, at least the majority of the votes, which all shareholders are entitled to cast, must be received in favor of the proposition.[6]

Wherefore, defendants owning 68 percent of the stock of Stegkamper Motors must have had knowledge and consented to the transfer of all of the interest of the corporation and the Ford dealership, together with the business directly or indirectly associated therewith, to Joseph Mullaney.

Nor may defendants hide behind the corporate veil theory to accomplish such a result.[7]

---

[4] Plaintiff states in his brief that Stegkamper Motors, Inc., has filed with the Department of State a certificate of election to dissolve and that dissolution notices appeared in the Mercer County Law Journal of October 23, 1973, and October 30, 1973.

[5] Act of May 5, 1933, P. L. 364, art. XI, sec. 1102, as amended, 15 PS §2102, and section 1103, 15 PS §2103.

[6] Act of May 5, 1933, P. L. 364, art. III, sec. 311, as amended, 15 PS §1311.

[7] A corporation is an entity separate and distinct from the persons owning stock even when one person owns all the stock: Donaldson v. Andresen, 300 Pa. 312, 150 Atl. 616 (1930). It is a distinct and separate entity irrespective of the persons who own all the stock: Barium Steel Corporation v. Wiley, 379 Pa. 38, 108 A. 2d 336 (1954). Nor does the fact that one person owns all the stock make him and the corporation the same person, nor the owner of all the corporation's property: Brown v. Gloeckner, 383 Pa. 318, 118 A. 2d 449 (1955). On the other hand, the corporate fiction will be disregarded to protect innocent third persons and to prevent fraud and injustice: Wersba v. Seiler, 263 F. Supp. 838 (1967), affirmed 393 F. 2d 937 (1968). The corporate veil will be disregarded and the individuals and the corporation considered

Although the word "fraud" is not alleged, facts from which fraud could be found are alleged.[8] If officers or directors of a corporation conspire to cheat and defraud a person dealing with that corporation by inducing that person to enter into an agreement with the corporation, they can be held individually liable for their acts.[9]

As to the right of plaintiff to recover, the matter is controlled by what has been referred to as the "hindrance of performance" rule:

"It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it . . . it seems evident that the same principle of justice which precludes a promisor from taking advantage of a

---

as identical whenever justice or public policy demand and when the rights of innocent parties are not prejudiced thereby: Gagnon v. Speback, 389 Pa. 17, 131 A. 2d 619 (1957); Wagner-Taylor Company v. McDowell, 137 Pa. Superior Ct. 425, 9 A. 2d 144 (1939); Bennett v. Coyne and Evans Motor Company, 145 Pa. Superior Ct. 275, 21 A. 2d 125 (1942); Satler v. Rice, 184 Pa. Superior Ct. 550, 135 A. 2d 775 (1957); Fedun v. Mike's Cafe, Inc., 204 Pa. Superior Ct. 356, 204 A. 2d 776 (1964). It has also been stated that the corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime: Sams v. Redevelopment Authority, 431 Pa. 240, 244 A. 2d 779 (1968). In Babis v. Mt. Jacob Cemetery Company, 179 Pa. Superior Ct. 616, 118 A. 2d 588 (1955), at page 590: "Our courts will not sanction a disregard of the corporate entity merely because the stock is closely held."

[8] It is, of course, recognized that, at this posture, the court is required to assume all facts as set forth in the complaint as being true and correct.

[9] In Vierling v. Baxter, 293 Pa. 52, 141 Atl. 728 (1928), after inducing plaintiff to assign over his patent and other assets from a previous corporation, the officers confessed judgment against the corporation on fictitious claims and ended by buying in patents worth over $60,000 for $1,200. Suit was permitted against the corporate officers who were held personally liable.

condition, the performance of which he himself has prevented, precludes him also from setting up a condition the performance of which he has made more difficult . . . And if the situation is such that the cooperation of one party is an essential prerequisite to performance by the other, there is not only a condition implied in fact qualifying the promise of the latter, but also an implied promise by the former to give the necessary cooperation."[10]

Restatement Contracts, §295 provides:

"If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused, and the actual or threatened nonperformance of the return promise does not discharge the promisor's duty, unless (a) the prevention or hindrance by the promisor is caused or justified by the conduct or pecuniary circumstances of the other party; or (b) the terms of the contract are such that the risk of such prevention or hindrance as occurs is assumed by the other party."

Pursuant to the import of the Restatement, Contracts, quoted above, an employe has been held in Pennsylvania to be permitted to recover his salary for a term of employment where performance was prevented by the employer discontinuing the business: Seipel v. International Life Insurance and Trust Company, 84 Pa. 47 (1877); Potts v. Rose Valley Mills, 167 Pa. 310, 31 Atl. 655 (1895).

The research of the parties and the independent research of this court has failed to produce any case directly in point. There are, however, sufficient authorities both in this Commonwealth and other similar

---

[10] 5 Williston, Contracts §677A, page 233 (3rd ed.).

jurisdictions to clearly support the basic cause of action appearing in the complaint, although many of the cases arise in equity.

In Bechtold v. Coleman Realty Company, 367 Pa. 208, 79 A. 2d 661 (1951), plaintiffs were minority stockholders in a realty company. The bylaws of the corporation under which they had acquired their stock imposed a restriction on the right of the stockholders to sell the company stock. In a four to two vote the stockholders removed the restriction and passed a resolution requiring all the stockholders within 15 days after notice by the secretary to surrender all certificates held by them. This was a case of first impression in Pennsylvania as to the right of the majority to repeal a bylaw imposing transfer restrictions on stock. The Supreme Court held that by doing so they deprived the stockholders of a substantial property right contrary to law without due process. It asked the rhetorical question of whether equity is so blind as to permit her to do by indirection what she may not do directly.

So, in the instant case, a similar rhetorical question may be asked: "Can the majority stockholders avoid an obligation to the plaintiff by selling out the assets of the corporation when they could not do so directly without first offering the stock to the plaintiff?" We have concluded they cannot.

In Gillian v. Consolidated Foods Corporation, 424 Pa. 407, 227 A. 2d 858 (1967), also an equity action, plaintiff, who had been the sole owner of a business concern, sold his inventory and contracted to be employed in a supervisory capacity with a division of defendant. He was discharged by defendant, assigning as its sole basis the need of reducing business costs. He was successful in obtaining an accounting

of all profits from the use of the business name transferred to defendant in that he had been wrongfully discharged, even though it was found that his hiring was merely at will. The pretext of reducing business operating costs was insufficient to avoid the obligations owed to plaintiff.

In Miles v. Metzger, 316 Pa. 211, 173 Atl. 285 (1934), two persons were given commissions by the Commonwealth to recover moneys on escheat for which they were to receive a commission provided by statute. Just before the moneys were to be received by the Commonwealth, the Secretary, without explanation or just cause, revoked their commissions. Through an action of mandamus, the Commonwealth was forced to fulfill its obligation with the court stating at page 217:

"It is well settled, as a principle of fundamental justice, that where one party to a contract is himself the cause of the failure of performance by the other party, he cannot take advantage of his own breach of the contract in so doing, to prevent a recovery by the other party."

In Aldrich v. Geahry, 367 Pa. 252, 80 A. 2d 59 (1951), plaintiff filed a bill in equity to compel specific performance of a contract for the sale of 75 shares of capital stock in a company of which defendant was the principal stockholder. Defendant had agreed to sell to plaintiff 75 shares of his total 103¼ shares. The shares contracted to be sold to plaintiff consisted of approximately one-fifth of the total business. Plaintiff desired to secure his shares and defendant informed him that he would not perform the contract, offered to return the money to plaintiff and, after refusal by plaintiff, discharged him. In holding for plaintiff, the court noted that to acquire a one-fifth interest in this business was a substantial incentive to plaintiff which,

in the court's opinion, was incapable of monetary evaluation. It held that this type of a contract could not be abandoned at any time desired by defendant.

In the Federal system, perhaps the closest factual case is Langer v. Iowa Beef Packers, Inc., 420 F. 2d 365 (8th Cir., 1970). Plaintiff was given an option by the Iowa Beef Packers, Inc., by whom he was employed, to purchase 100 shares of common stock of that company for a stated consideration. He agreed to remain in continuous employment for the company as part of the consideration. It was provided that in the event he ceased to be an employe of the company or any of its subsidiaries for any reason, whether voluntary, involuntary or by death, his right terminated. He was transferred as plant manager of defendant company to Perry, Iowa. Before he had exercised his option, his employer sold the plant to Oscar Mayer and Company. Upon discovering the sale, plaintiff chose to exercise his option but was advised by his former employer that in that he was no longer working for them the option was invalid. He tendered the purchase price of the stock which was refused. The court held that even though the assignment of plaintiff's employment contract was made in good faith and not for the purpose of defeating his option to purchase stock, he was entitled to recover. The court held in looking at the stock option:

"[t]he purpose is the attraction and retention of desirable employees, and the granting of an option is considered a form of compensation."

Similarly, in the Federal system for Pennsylvania recovery was discussed in Fredericks v. Georgia-Pacific Corporation, 331 F. Supp. 422 (E.D.Pa., 1971). There, plaintiff sued his former employer for damages for failure to permit him to exercise options under a written stock option contract. He had been the presi-

dent of a company which was merged in the defendant-corporation and hired as a division manager of that corporation. As such, he became a member of the defendant-corporation's stock bonus plan which terminated if the employe voluntarily left the defendant-corporation or was discharged with or without cause. He claimed that, after several years of faithful performance, he was transferred to defendant's home office where he resigned because of "minor and major humiliations and harassments thus making it impossible for the employment relationship to continue." The matter was heard on the pleadings as in the case at bar. Using section 677A of Williston Law of Contracts and the Restatement, Contracts, §295, previously quoted in this opinion, the court held that the hindrance in the performance of the contract by the defendant-corporation in forcing the resignation was sufficient, if proved, to establish a right to recover.

Finally, in Rainier v. Champion Container Company, 294 F. 2d 96 (3rd Cir., 1961), recovery was permitted where one party to the contract caused the failure of performance thereby permitting recovery. Plaintiff was a broker who secured a purchaser for a corporation for $1,000,000. The purchaser desired to have its bookkeeper examine the corporate records and financial statements before closing the transaction. The president of the defendant-corporation arbitrarily refused to permit it and refused to see or receive calls from plaintiff. Subsequently, the defendant-corporation was sold for $1,500,000. In permitting recovery, the court stated at page 103:

"Also, it is well settled that where one party to a contract is himself the cause of the failure of performance by the other party, he cannot advantageously utilize his own fault as an exit of escape from the performance of his contractual obligations."

There can be no debate that the right of first refusal does not give the employe the right to purchase stock until the employer wishes to sell.[11] It cannot be concluded, however, that merely because the stock has not been sold that the option is not a valuable contract right.[12]

There is, however, a fatal allegation missing in plaintiff's complaint which constrains this court to grant the demurrer subject to amendment. That is that plaintiff fails to allege, nor can it be interpreted from any of the language contained in the complaint, that he was able to or did offer to purchase defendants' stock had the occasion arisen. Such an allegation is not an idle use of verbiage. If plaintiff is not in a position to, in fact, purchase the 68 percent of the outstanding stock or, at the very least, 51 percent, his basis for damages in the majority is devoid of any merit. When there is a right of first refusal, there must be a compliance with the conditions required to exercise that right.[13]

In addition, if it is contended that there was, in fact, a fraud performed by defendants against plaintiff through their conduct, it must be specifically alleged or it cannot be proved. This is, of course, of import in deciding what damages, if any, to which plaintiff is entitled.[14]

---

[11] Pritchard v. Wick, supra.

[12] Bechtold v. Coleman Realty Company, supra.

[13] Gateway Trading Company, Inc. v. Children's Hospital of Pittsburgh, supra; Shepherd v. General Telephone & Electronics Corporation, 411 Pa. 49, 190 A. 2d 895 (1963); Lancaster Malleable Castings Company v. Dunie, 365 Pa. 95, 73 A. 2d 417 (1950).

[14] Frey v. Nakles, 380 Pa. 616, 112 A. 2d 329 (1955), holds that where one party acts in good faith, the damages are entirely different than when that same party acts arbitrarily and without just cause in order to escape the effects of a bad bargain or where his failure to perform is fraudulent.

With the holding that the demurrer must be sustained subject to amendment, this court is relieved at this time of the obligation of considering measure of damages. This question is not easily resolved, but the determination rests entirely on what is properly pleaded.[15]

Wherefore, the following appropriate order is entered.

## ORDER

And now, March 22, 1974, defendants' demurrer is sustained as to the third contention of the demurrer that plaintiff did not allege that he wished or was able to exercise the option to purchase defendants' stock had the occasion arisen. The demurrer, as to the first and second contentions, is denied. The demurrer as to the fourth paragraph, dealing with measure of damages, is denied in view of the right to be granted to plaintiff to amend his complaint, but is not ruled upon on the merits. The motion for a more specific complaint is not ruled upon in view of the order above.

Plaintiff is granted 20 days in which to file an amended complaint in accordance with this opinion and order.

---

[15] As previously noted in this opinion, the majority of the cases which are factually similar arise in the courts of this Commonwealth as opposed to the Federal courts, which do not have separate division in equity, and ask for equitable relief. Because the measure of damages is so difficult to determine, equity is much better suited to place the parties back in the position they were prior to the alleged wrongful act. Indeed, some of the cases have held that the remedy at law is obviously inadequate and that equity is required: Aldrich v. Geahry, supra; Roth v. Columbia Distributing Company of Allentown, 371 Pa. 297, 89 A. 2d 825 (1952). However, consideration must be given to the interest of the new purchaser, Joseph Mullaney, if consideration is directed towards an effort to restore the matter to its status quo prior to the sale to Mullaney.