RICHARD L. BROWN, APPELLEE AND CROSS-APPELLANT, V. KENNETH B. KNOX AND MARILYN M. KNOX, HUSBAND AND WIFE, ET AL., APPELLANTS AND CROSS-APPELLEES.

361 N.W.2d 540

Filed February 8, 1985.   No. 83-587.

John R. Hall of Anderson, Vipperman, Hinman, Hall & Kovanda, for appellants.

Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

Richard Brown brought suit in the district court for Hall County against Kenneth and Marilyn Knox for specific performance of an oral contract for Brown's acquisition of 50 percent of the shares of First Holiday Tour and Travel, Inc. We modify and affirm the judgment of the district court.

An action for specific performance of a contract is equitable in nature. *Matthews v. Matthews*, 215 Neb. 744, 341 N.W.2d 584 (1983). In its appellate review of suits in equity, the Supreme Court reviews the record de novo and reaches an independent conclusion irrespective of the decision reached in the trial court. See Neb. Rev. Stat. § 25-1925 (Reissue 1979). However, this standard of review is subject to the well-established rule that where credible evidence is in conflict on a material issue of fact,

the Supreme Court will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Ryan v. Kolterman*, 215 Neb. 355, 338 N.W.2d 747 (1983); *Burton v. Annett*, 215 Neb. 788, 341 N.W.2d 318 (1983).

In the summer of 1979 Brown was transferred from Grand Island to Omaha as manager of Roberts Dairy. Sometime in January 1980 and as a result of a change in Roberts' ownership, Brown was discharged by Roberts. Ken Knox, a Grand Island acquaintance of Brown, contacted Brown about the possibility of a business relationship involving the two. Knox owned shares in Knox Construction Company. After a couple of meetings between the parties, Brown went to work for Knox Construction at a salary of $500 a week, with the understood objective that Brown would seek businesses as joint opportunities for Brown and Knox. In March 1980 Brown moved his family to Grand Island.

Brown looked over several possible business opportunities for Knox and himself. One such business was First Holiday Tour and Travel, Inc., in Grand Island. In April 1980 Knox and his wife, Marilyn, with Brown explored a possible purchase of First Holiday. A preliminary draft of an agreement for purchase of First Holiday stock designated Knoxes and Brown as the purchasers, who would ultimately form a corporation and substitute the newly formed corporation as purchaser in the transaction for acquisition of First Holiday stock. However, an accountant advised Knoxes and Brown that it would be better for tax purposes that an existing corporation rather than a new corporation purchase First Holiday. At this time Knoxes owned Marilyn's Figurama, Inc. (Figurama), that is, each of the Knoxes owned one-half of the shares of Figurama and were directors of that corporation. Concerning Figurama, Knoxes and Brown decided to "shell it out" (liquidate all corporate assets) and then use Figurama as a holding company in the acquisition of First Holiday.

Knox Construction Company would assist in financing the acquisition of First Holiday by making a loan to Figurama, namely, $50,000 for a downpayment on the First Holiday purchase price, with interest at an annual rate of 10 percent, a

favorable rate at the time. Further, according to Brown, as soon as Figurama liquidated its assets after acquiring all the shares of First Holiday, Figurama would then transfer to Brown one-half of the purchased shares of First Holiday. The balance of the purchase price for First Holiday stock, according to Knoxes and Brown, would be paid from income produced by the operations of First Holiday.

On May 30 Figurama signed an agreement for purchase of all issued and outstanding shares of First Holiday (200 shares), made a downpayment on the purchase price, and delivered its corporate promissory note to pay the balance of the purchase price for the First Holiday shares. The contract called for a purchase price of $120,000, of which $65,000 was allocated for First Holiday shareholders' covenant not to compete. Knoxes and Brown signed their "personal guarantee" for Figurama's performance of all obligations imposed on Figurama under the agreement regarding First Holiday.

Figurama acquired all shares of First Holiday. Marilyn Knox and Brown conducted the daily business of First Holiday. Brown became vice president and general operating officer of First Holiday at an annual salary of approximately $26,000. First Holiday paid Marilyn Knox an annual salary of $12,800 in 1981 and $14,650 in 1982. Ken Knox had no active role in the everyday operations of First Holiday.

In August 1980 the parties considered but did not sign a document regarding their previous oral agreement for acquisition of the shares of First Holiday. However, Knoxes and Brown, on August 1, did sign a "STOCK OPTION CONTRACT," which in part provided:

NOW THEREFORE, for the above reasons and in consideration of a mutual covenant herein contained, it is agreed as follows:

1. Ken Knox and Marilyn Knox, hereinafter referred to as Grantors, hereby grant to Richard L. Brown, hereinafter referred to as Grantee, the right, option and privilege, of purchasing 50% of the voting shares at a price to be determined upon exercise of option of the stock of Marilyn's Figurama, Inc.

2. Said option shall be effective immediately upon the

signing hereof and shall continue until such time as the option is exercised or until mutual termination by the parties hereto.

3.   Said option shall be exercised no later than thirty days after receipt of notice by Grantee from Grantor of the liquidation of assets and liabilities associated with the business operation known as Marilyn's Figurama located as [sic] 208 North Wheeler Avenue, Grand Island, Nebraska. Said notice shall be sent by Grantor to Grantee at the above address by certified mail.

4.   With respect to operations of Marilyn's Figurama, Inc., as related to First Holiday Tour and Travel, Inc., Grantee shall be liable for any related losses, loans or indebtedness of both companies as well as be the benefactor of any rewards or incomes. This shall be in direct proportion to Grantees [sic] percentage of optioned ownership in Marilyn's Figurama, Inc.

5.   Failure to exercise this option within thirty days of receipt of said notice shall terminate this agreement for stock option but shall not affect Grantee's position in respect to earnings or liabilities as previously mentioned in part 4 of this agreement, as in effect as at the date that Grantee fails to exercise his option.

Brown testified that the option was intended to "cement" his previous agreement with Knoxes for his acquisition of an interest in First Holiday without any further "cost" to Brown. Knoxes suggested at trial that the option negatived any agreement for Brown's acquisition of First Holiday stock and that the option was the only means by which Brown could acquire stock in any corporation in which Knoxes were interested.

Marilyn Knox and Brown operated First Holiday profitably over the next 2 years so that Figurama received payments from First Holiday sufficient to repay Knox Construction Company the principal of the $50,000 loan and made additional payments of approximately $28,000 toward Figurama's promissory note given for the acquired shares of First Holiday. Throughout this time Knoxes and Brown held themselves out to the public as coowners of First Holiday.

Friction developed between Marilyn and Brown. On June 24, 1982, Ken Knox gave written notice to Brown that all assets of Marilyn's Figurama, exclusive of First Holiday shares, had been liquidated and that Brown had 30 days to exercise the stock option entered in August 1980. On August 20, without request from Brown, Knoxes sought and obtained the release of Brown from his guaranty of Figurama's obligations to the former shareholders of First Holiday. Brown demanded that Knoxes transfer to him 50 percent of the shares of Figurama as evidence of Brown's 50-percent ownership in the First Holiday shares acquired by Figurama. Knoxes refused to transfer any shares of Figurama unless Brown paid $77,000 for 50 percent of the First Holiday stock owned by Figurama.

Brown filed suit and sought specific performance of the agreement for his acquisition of 50 percent of the First Holiday stock. Knoxes filed a general denial. After trial the district court found:

> That the agreement between the Plaintiff [Brown] and the Defendants, Knox, was that the Plaintiff and Defendants, Knox, would purchase First Holiday Tour and Travel, Inc., a Nebraska Corporation, with Plaintiff owning fifty (50) percent and Defendant, Knox, together owning fifty (50) percent . . . [and] [t]hat Plaintiff and Defendants, Knox, agreed to use an existing corporation of the Defendants, Marilyn's Figurama, Inc., as a vehicle for convenience sake for the purchase of First Holiday Tour and Travel.

The district court made no finding that a joint venture existed between Knoxes and Brown. The district court then entered the following order: "Plaintiff is a 50 percent owner of First Holiday Tour and Travel and is entitled to be issued proof of such ownership in the form of shares of Marilyn's Figurama, Inc."

Knoxes contend that the district court erred in finding that a joint venture existed and in not finding the stock option binding on the parties. Brown cross-appeals and contends the district court should have ordered Figurama and Knoxes to transfer 50 percent of the First Holiday shares acquired by Figurama.

Brown's basic cause of action relates to the existence and

specific enforcement of a contract for acquisition of corporate shares. The district court found the existence of such contract and, further, found Brown to be a "50 percent owner of First Holiday Tour and Travel," who was entitled to receive the shares of Figurama in order to achieve the intended ownership in First Holiday, that is, acquisition of shares of First Holiday.

The evidence is conflicting about the manner in which Brown's acquisition of an interest in First Holiday was to be accomplished. Brown asserts an agreement by which he was entitled to 50 percent of the shares of First Holiday as soon as all assets of Figurama, exclusive of First Holiday stock, were liquidated. Such liquidation of Figurama assets has occurred. Knoxes contend that the only arrangement with Brown regarding corporate shares is contained in the stock option of August 1980, which Brown did not exercise. The district court found, as do we, that the evidence supports the existence of the agreement claimed by Brown. The only assets of Figurama are the shares of First Holiday, 50 percent of which belong to Brown as a result of his agreement with Knoxes.

Generally, before a court will order specific performance, there must be an inadequate remedy at law. See *Reese v. Hatfield*, 201 Neb. 540, 270 N.W.2d 898 (1978). In the case before us there is no dispute that First Holiday is a closely held corporation whose issued and outstanding shares are, likewise, owned entirely by a closely held corporation, Figurama. As this court has noted, contracts for acquisition of shares of a closely held family corporation, which stock is not obtainable in the open market, are proper subjects for specific performance. See *Reese v. Hatfield, supra*. "A contract for the sale of securities which are not procurable upon the market and have no market value may be specifically enforced." *Goodall v. Stanosheck*, 131 Neb. 720, 723-24, 269 N.W. 814, 816 (1936). Specific performance to transfer First Holiday shares to Brown is proper under the circumstances.

We agree that Brown, by his agreement with Knoxes, is entitled to 50 percent of the First Holiday shares purchased by Figurama. In other words, Brown is entitled to 50 percent of the issued and outstanding shares of First Holiday. Obviously, Figurama was nothing more than a conduit for acquisition of

First Holiday stock and ultimate transfer of 50 percent of the acquired First Holiday stock to Brown. Although the district court ordered that shares of Figurama be delivered to Brown, such action is circuitous under the circumstances. Our judgment, namely, that Brown is entitled to 50 percent of the shares acquired by Figurama as a result of the purchase from the First Holiday shareholders on May 30, 1980, is more direct and consistent with our determination of the agreement of the parties. Since there has been no evidence of any change in ownership of the First Holiday shares acquired by Figurama, we find and order that Knoxes, as shareholders and directors of Figurama, shall cause Figurama to transfer, and Figurama shall transfer, to Brown 50 percent of the First Holiday shares acquired by Figurama.

AFFIRMED AS MODIFIED.