LUKE J. CONIGLIO ET AL., APPELLEES, V. NIKOLAUS R. HANSL ET AL., APPELLANTS.

371 N.W.2d 273

Filed August 2, 1985.    No. 84-292.

E. Scott Dosek and William E. Naviaux of Naviaux, Kinney, Dosek & Andres, and J. Patrick Green, for appellants.

William E. Gast, for appellees.

BOSLAUGH, WHITE, and HASTINGS, JJ., and BRODKEY, J., Retired, and FAHRNBRUCH, D.J.

HASTINGS, J.

Plaintiffs brought this action under Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1979), seeking a declaration of the rights and liabilities of the various parties under a certain written contract containing either an option to purchase or a first refusal option, executed sometime during the month of June 1977. Specifically, the plaintiffs sought a declaration that they had no liability to the defendants under the agreement, whereas the defendants counterclaimed, seeking specific performance of what they insist was an option to purchase certain property. We affirm the judgment in favor of plaintiffs.

The plaintiffs were the owners, either personally or through corporate entities, of certain pharmacies within the city of Omaha. They, together with a corporation which they owned, contracted with the defendants to sell to the latter Central Park Pharmacy No. 2. Contemporaneously with the execution of that instrument, the individual plaintiffs, and a third party who has no connection with this litigation, executed exhibit 2, entitled "Guarantee of Performance of Contract and Grant of First Refusal Option." By the terms of that agreement the plaintiffs guaranteed the performance of the sales contract and, in addition, granted a "right of first refusal" in words and figures as follows:

> As part of the consideration for the sale [of] Central Park Pharmacy No. 2 to Obligees [defendants], Guarantors [plaintiffs] hereby grant to Obligees the absolute right of first refusal to purchase one-third (1/3) of the issued and outstanding stock of a corporation which will own and operate the pharmacy in the Millard Shopping Center. It being the intention of the parties that the Obligees shall be given the opportunity to become one-third (1/3) owners of the pharmacy store to be opened by Guarantors in the

Millard Shopping Center.

This document was drafted by the attorney representing the defendants.

The defendants urge that this agreement must be interpreted as one for an absolute option to buy into the Millard pharmacy, now called store No. 8, for the original startup cost, i.e., the amount of capital originally contributed by each of the two plaintiffs to open the store.

The district court concluded that whether the agreement is construed as a "right of first refusal" or an absolute option in favor of the defendants to purchase a one-third interest in store No. 8, defendants are not entitled to a decree of specific performance. If the agreement was a "right of first refusal," reasoned the court, the defendants have no contractual rights to purchase until the plaintiffs have received a bona fide offer of a third person to buy the pharmacy, which contingency has not occurred. If intended as an "option," the contract is illusory because it fails to set forth any terms and conditions upon which the court could base such a decree. Apparently because this case was actually tried as one in specific performance, all parties agree that we should review this appeal de novo on the record.

As we view the instrument, it is not an option but a classic example of a "right of first refusal." A right of first refusal is separate and distinct from an option. As noted by appellees, 11 S. Williston, A Treatise on the Law of Contracts § 1441A at 948-50 (3d ed. 1968), states:

> While options and the so-called "right of first refusal" are sometimes confused, there is a clear and classic distinction: The option compels performance within the time limit specified, or if none is mentioned, then within a reasonable time, whereas the right of first refusal has no binding effect unless the offeror decides to sell.
>
> The right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy.

Williston goes on to note:

In the case of an option . . . the option-giver has no choice but must sell when the option is accepted according to its terms. What is usually provided is that there will be an expression of acceptance communicated to the option-giver, or that payment according to the terms of the option will be made within the time limit. . . .

In summary . . . it may be said that while there has been some tendency to identify an option with the so-called "right of first refusal," the two can and should be distinguished, just as the option is distinguished from a contract of purchase and sale. The option gives a clear right to the option-holder, regardless of the wishes of the option-giver, whereas the "right of first refusal" or "preemption" is conditioned upon the willingness of the owner to sell; it can be enforced by specific performance where such willingness can be proved.

*Id*. at 951-53.

Appellants argue that while there is ordinarily a clear distinction between options and first refusal agreements, the use of the phrase "right of first refusal" cannot be allowed to defeat the intention of the parties when it is clear from their total agreement that they intended an absolute option. They cite in support of that proposition *Tantum v. Keller*, 95 N.J. Eq. 466, 123 A. 299 (1924), *aff'd* 96 N.J. Eq. 672, 126 A. 925 (1924); *Lancaster Castings Co. v. Dunie*, 365 Pa. 95, 73 A.2d 417 (1950); *Associated Truck Lines v. Baer*, 346 Mich. 106, 77 N.W.2d 384 (1956); and *Pruner and Rees v. Brown*, 216 Va. 885, 223 S.E.2d 890 (1976).

However, appellants neglect to mention that the language used in the cited cases is generally "first right and option to purchase," followed by a definite timeframe and a specific purchase price. As a matter of fact, the *Pruner* agreement granted the lessee the " 'first right to purchase the leasehold property at the end of the fourth year of the lease at the price of Sixty Five Thousand Dollars . . . .' " *Id*. at 886, 223 S.E.2d at 891. The court, in holding this to be an absolute option to purchase, said:

Here, the lease specified the purchase price, terms and manner of financing and time when the right could be

exercised. These terms are far more compatible with an absolute option than they would be with a right of first refusal. Even the parties, in line 7 of paragraph 7 of the lease, refer to the right as an option.

We are not dealing here with a bare "right of refusal" but with an instrument which, by its specificity, would unquestionably have created an absolute option except for the word "first" in the first line of paragraph 7. Reading and construing the agreement as a whole, we hold that the right which it created was an option to purchase vested in the lessees rather than a "right of first refusal" as found by the trial court.

*Id*. at 887, 223 S.E.2d at 892.

On the face of it, the so-called option in the case at bar was merely a "right of first refusal" which required an intervening offer by the appellees to sell the pharmacy for a named price before the appellants' rights ripened into a right to purchase. However, for whatever reason, the appellees seem to concede that by signing the agreement, exhibit 2, which granted appellants the "right of first refusal," it was understood that such an agreement granted appellants an opportunity, if they exercised that option, to become one-third owners of the store.

However, the testimony of the various parties as to the terms of that so-called option is conflicting. Appellants contend that they were to be permitted to purchase, apparently at any time, a one-third interest in the store for one-third of the original "start-up cost."

Appellees agree that had the appellants exercised their option in the beginning and paid the sum of $50,000, which appellee Giesler told them it would take, in June of 1977, the option would have been honored. However, not only was the option not exercised by words or notice but neither was any money paid or tendered by the appellants.

As late as the fall of 1980, after appellees Coniglio and Giesler had furnished all of the capital, including a liquor license held by them at another store, and had invested all the time and labor necessary to make the store a profitable business, appellants insisted they should be allowed to exercise their option based on the "original start-up cost." Appellees

refused and offered one-third of the business for $100,000, which they claimed to be one-third of the then book value of the store. Appellants neither accepted the offer nor tendered any money.

On a de novo review of the record, where the testimony is in conflict on material issues of fact, this court will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Brown v. Knox*, 219 Neb. 189, 361 N.W.2d 540 (1985). Accordingly, we believe the version of the agreement testified to by the appellees is the more credible, and we accept that as true.

Determining that the appellants never exercised their option as provided and as agreed, which we do, the evidence in support of appellants' claim for specific performance is neither clear, satisfactory, nor unequivocal. *Tedco Development Corp. v. Overland Hills, Inc.*, 200 Neb. 748, 266 N.W.2d 56 (1978). The judgment of the trial court was correct and is affirmed.

AFFIRMED.