298 F.2d 528
 Jack R. SMITH and Maude Esther Babers, d/b/a New Mexico Air Contractors, a co-partnership, and Jack R. Smith and Irma Story, d/b/a A. V. Aircraft Co., a co-partnership, Appellants,
v.
ORION INSURANCE COMPANY, Cravens, Dargan & Co., and Hartley W. White, d/b/a Hartley W. White & Associates, Appellees.
Hartley W. WHITE, d/b/a Hartley W. White & Associates, Cross-Appellant,
v.
Jack R. SMITH and Maude Esther Babers, d/b/a New Mexico Air Contractors, a co-partnership, and Jack R. Smith and Irma Story, d/b/a A. V. Aircraft Co., a co-partnership, Cross-Appellees.
 No. 6678.
 No. 6699.
 United States Court of Appeals Tenth Circuit.
 November 3, 1961.
 Rehearing Denied March 8, 1962.
 
 Benjamin M. Sherman and Ray Hughes, Deming, N. M., for appellants and cross-appellees.
 James C. Ritchie, Albuquerque, N.M. (Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., on the brief), for appellees, Orion Ins. Co. and Cravens, Dargan & Co.
 William B. Keleher, Albuquerque, N. M., for appellee, White.
 T. B. Keleher, Albuquerque, N. M., for cross-appellant, White.
 Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This was an action by appellants, Jack R. Smith and others, on an insurance policy issued by defendant, Orion Insurance Company of London,[1] to appellants insuring a helicopter against loss or damage caused by a crash with the ground while one rotor thereof was in motion. The insurance was in force by a binder at the time the loss occurred. The policy itself was not issued until after the loss. Defendant, Hartley White was alleged to be the agent of defendant, Cravens, Dragan & Company,[2] which, in turn, was alleged to be the agent of Orion. In a first cause of action, recovery was sought on the policy against all defendants for the amount of the alleged loss, interest, attorneys' fees and costs.
 
 
 2
 In a second cause of action, appellants sought judgment against defendants for the amount expended in removing the crashed helicopter from the mountains where it crashed, in the sum of $1,032.00, costs and interest.
 
 
 3
 In a third cause of action, appellants sought judgment against Hartley W. White personally for all loss incurred. This cause was predicated on the ground that White had been advised by Smith of a change in the named pilot from Frank Mettner, named in the policy, to Raymond C. Linker, and negligently failed to advise Cravens and Orion of such change.
 
 
 4
 In a fourth cause of action, appellants allege that prior to the issuance of the binder, they advised Hartley W. White, as agent of Cravens, that the helicopter had been operated by Mettner, but that thereafter they advised him that Mettner was leaving their employment and that Linker would be the pilot, and that White approved such change; that although Cravens had knowledge through its agent of such change, it failed to notify Orion of such change. Judgment was therefore asked against Cravens for the amount of the loss.
 
 
 5
 In addition to his answer to the complaint, White filed a counter-claim against appellants asking judgment against them for $6,080.00, which he claimed was due him for the insurance premium.
 
 
 6
 Trial was had to a jury. At the conclusion of the hearing, the court directed a verdict in favor of the defendants on all four causes of action and in favor of appellants on White's counter-claim. Appropriate judgments were entered on the jury verdict. Plaintiffs have appealed from the judgment of the court in favor of defendants, and defendant White has cross-appealed from the judgment against him on his counter-claim.
 
 
 7
 Number 6699.
 
 
 8
 We will first consider the question raised by White on his cross-appeal. As stated, White was a defendant in the main action. After denying liability, he filed a cross-claim in which he alleged that in consideration of the issuance of the policy, plaintiffs had agreed to pay him a premium of $6,080.00, for which he asked judgment. There is no evidence in the record supporting a finding that there was a contract between plaintiffs and White for the payment to him of the premium. The $6,080.00 is the total amount of the premium for the issuance of this policy. The premium is due from the insured to the insurer for the issuance of the policy. White's right to the premium must, therefore, arise by operation of law.
 
 
 9
 A correct statement of the decisive principle of law is found in 44 C.J.S. Insurance § 358(e), p. 1339, as follows:
 
 
 10
 "Ordinarily insurer is the one to enforce liability for unpaid premiums. An agent of insurer usually does not have the right to sue in his own name to recover a premium, even as to a policy negotiated by him, and even where he is authorized to collect the premium, unless he is entitled thereto by way of assignment or subrogation. However, he may sue in his own name where the company holds him liable for premiums and he has paid the one in question, and an assignment is unnecessary to enable him to sue in his own name."
 
 
 11
 White testified that he had not paid the premium. In response to a question by the court, he stated that he did not "own" this premium. There is no evidence that the insurer holds him personally liable for the amount of the premium. All the elements entitling him to the premium by way of an assignment or subrogation are absent. White's cause of action failed to state a cause of action entitling him to recover.
 
 
 12
 Number 6678.
 
 
 13
 In this appeal, appellants contend the court erred in directing a verdict in favor of defendants on the issue of liability under the policy. Whether there was a jury question of liability must be determined from these facts. Jack R. Smith and Maude Esther Babers, a co-partnership, were doing business as New Mex Air Contractors. Jack R. Smith and Irma Story, a co-partnership, were doing business as A. V. Aircraft Company. The partnership referred to as New Mex Air Contractors owned a helicopter which they leased to the partnership known as A. V. Aircraft Company. For the purpose of this opinion, it is sufficient to refer to the plaintiffs as Jack R. Smith.
 
 
 14
 As stated by appellants in their statement of facts, Jack R. Smith commenced doing business with defendant, Hartley W. White, an insurance agent, in 1952. White wrote liability coverage on all of Smith's aircraft policies requiring the names of pilots[3] for the purpose of premium computation. Changes in named pilots were made frequently pursuant to phone conversations between Smith and White.
 
 
 15
 In April, 1958, Smith made inquiry of White concerning physical damage coverage on a helicopter which he intended to buy. Being advised by White that he could procure such insurance, he contracted with Bell Helicopter Factory in Fort Worth, Texas, for the purchase of a helicopter. Smith went to Fort Worth where he met Frank Mettner, a helicopter pilot, and on April 25, accepted delivery of a helicopter from Bell, and immediately called White and requested all-risk full-hull coverage, with breach of warranty in favor of Bell, and asked for telegraphic confirmation that coverage was in effect. In the conversation of April 25, Smith was told that Mettner would be the pilot. Smith claims no reference was made in the April 25th conversation about a pilot warranty. After flying the helicopter for some time, Mettner advised Smith that he was leaving for California and could no longer fly the helicopter, and recommended Raymond C. Linker, a pilot, to fly the helicopter. Linker could not qualify as a named insured pilot. Smith states that he advised White of Linker's qualifications and was assured by him that coverage would not be affected thereby. Linker began flying the helicopter and was flying it at the time it crashed.
 
 
 16
 Upon being notified of the crash, Smith notified White's office. On that evening, a Mr. LaBoyteau, an adjuster for Orion, and who Smith contends was its agent, called Smith for information about the crash. A discussion was had as to who the pilot was at the time of the crash, where it could be examined, how and at what cost it could be removed. Smith agreed to furnish the labor, mechanics and trucks to bring the helicopter out. LaBoyteau admitted this conversation but denied that he had agreed to pay the costs of the removal. Smith removed the helicopter and paid all the expenses connected with its removal. Smith stated that on July 10, he received a letter from LaBoyteau denying liability under the policy. At this time, Smith had not yet received the policy and testified he had no knowledge that the policy contained a pilot warranty. The policy was received by Smith from White on August 13, 1958. On July 10, 1958, Smith received a letter signed Toplis & Harding, Wagner & Glidden, by Brooks G. LaBoyteau, advising that because of violation of the pilot warranty, the underwriter denied liability. Toplis & Harding, Wagner & Glidden were adjusters and surveyors of Los Angeles, California.
 
 
 17
 The first contention is that the court erred in directing a verdict in favor of Cravens and Orion on appellant's first cause of action. Appellant's first cause of action is predicated upon the policy and in it appellant sought judgment on the ground that the policy was in full force and effect. As to Cravens, it is sufficient to say he was not a party to the insurance policy, and, therefore, a cause of action seeking recovery under the policy stated no cause of action against him. No recovery could be had against Orion unless it was precluded from invoking the named pilot provision of the policy providing that there would be no liability if the helicopter was being operated at the time of the loss by a pilot other than the one named in the policy. Appellants admit they are bound by the terms of the certificate of insurance received by them. They concede the effect of the named pilot provision of the policy and that they are bound by the provisions of the policy unless they can show that Orion "had information which should have changed the policy terms prior to the issuance of the policy, or unless, by their conduct following the loss, they waived their right to insist on a strict compliance with all the terms of the policy or were estopped from claiming a breach."
 
 
 18
 There is no evidence which would support a finding that Orion at any time prior to the issuance of a policy had actual knowledge of a change in pilots. But, even assuming that it had knowledge, it was not required to substitute Linker as named pilot in the place of Mettner. Linker could not qualify as a named pilot. The policy was issued as a named pilot policy and Orion was not required to substitute a non-qualified pilot. It could become liable only if, by its conduct following the loss, it waived its right to insist on strict compliance with the named pilot provision of the policy.
 
 
 19
 Appellant contends there was evidence from which a jury could find that Orion was estopped or waived its right to insist on a named pilot provision. Their position is that there is evidence from which a jury could have found that White was the agent of Cravens and of Orion. It is sufficient to say that the record is devoid of any evidence which would support a finding that White was Orion's agent.
 
 
 20
 Whether there is any evidence warranting the submission of the question of estoppel against Orion to the jury depends upon the relationship between White and Cravens on the one hand, and Cravens and Orion on the other. For the purpose of considering this question, it may be conceded without so deciding that White was Cravens' agent and that information to White was information to Cravens, but whether information to Cravens would bind Orion, depends upon the relationship between them. To be binding on Orion, the relationship between it and Cravens must be such that by implication of law, knowledge to Cravens was in turn knowledge to Orion.
 
 
 21
 Section 14 of the certificate of insurance relating to changes in the policy provision provides that:
 
 
 22
 "Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Certificate or estop the Underwriters from asserting any right under the terms of this Certificate; nor shall the terms of this Certificate be waived or changed, except by endorsement, issued to form a part of this Certificate."
 
 
 23
 The court correctly held that the law of California controlled the interpretation of the policy. Appellee, Orion, cites the case of Sharman v. Continental Ins. Co., 167 Cal. 117, 138 P. 708, 711, 52 L.R.A., N.S., 670, as holding that even an actual agent was without authority to waive such a provision in a policy. We think that statement is too broad. What the court said was that,
 
 
 24
 "* * * the authority of an agent to effect the waiver in the face of such a limitation as here is not vested in every agent who may represent the company. Unless such authority be given to some particular agent to do so, then, as a general rule, it is only agents of the company who are empowered to issue and deliver policies who may be regarded as having the power to waive conditions and forfeitures. They are the general agents of the company, and vested with full authority to consummate the contract of insurance, and are deemed, as such representatives, to have the same power to waive conditions as the companies themselves. As to the character of agents authorized to waive such conditions, it is said, in 3 Cooley's Briefs on Insurance, p. 2480: `This rule includes all persons empowered to conclude contracts of insurance without first referring the negotiations to their principals * * *.'"
 
 
 25
 There is not a scintilla of evidence that Cravens' agency from Orion was of that character. It is without dispute that Cravens was required first to submit applications for insurance to Orion, secure approval and then issue the policy on the terms and conditions dictated by Orion. There is no evidence in the record that Cravens held a general agency contract from Orion.
 
 
 26
 Smith contends that in any event Orion is estopped to rely upon a breach of the named pilot warranty provision of the policy by waiting an unreasonable time in notifying Smith that they relied upon this provision of the policy. It is, of course, true that a company may waive a defense it has by unreasonably delaying and notifying an insured that it stands thereon. The crash occurred May 23rd. Liability was denied by Orion on July 10. This is not such an unreasonable delay under the authorities as would estop the company for insisting on this defense.
 
 
 27
 As a part of its first assignment of error, appellant contends the court erred in failing to submit to the jury the question whether Cravens negligently failed to notify Orion of a change in the named pilot and thus caused loss to Smith, for which it would become liable. Appellant sought to recover for this alleged loss in its fourth cause of action. The short answer to this is there is no evidence that Smith ever applied to anyone for a change in the named pilot from Mettner to Linker. Mettner was the pilot named in the policy. He was flying the helicopter at the time of this conversation. Before a change could be made from Mettner to Linker, an application for such a change must be brought home to the company, giving the date when Mettner would cease to operate the helicopter and when Linker would take over. Smith's own testimony is that he advised White that Mettner was going to leave and that he had another pilot [Linker] in mind to fly the helicopter; that he told White that Linker had 700 hours of flying time and that White advised him that "as far as Ray [Linker] flying the airplane, it was perfectly all right."[4]
 
 
 28
 This did not constitute an application for a change of the pilot named in the policy. It was clear from this conversation that Mettner was to continue for some time to fly the helicopter and that a change would take place only in the future when Mettner quit. Obviously, an approval of a change in named pilot could not be made until there was an application for such a change, stating the time when Mettner would quit and Linker would commence to fly the helicopter. So even if we assume that White was Cravens' agent, and knowledge to White was knowledge to Cravens, the conversation between Smith and White was insufficient to constitute knowledge to Cravens that an application had actually been made for a change in named pilot, which it, in turn, was bound to convey to Orion, again assuming that Cravens was Orion's agent for this purpose.
 
 
 29
 Appellant next contends that the court erred in directing a verdict for Orion as to plaintiff's second cause of action. In this cause of action, Smith sought to recover the sum of $1,932.00, which he incurred in removing the helicopter from the mountains. Paragraph 5 of the policy provides that failure on the insured's part to protect the damaged property shall not be recoverable but that reasonable expenses incurred in protecting the property shall be recoverable. There is no evidence that it was necessary to remove this helicopter for its protection. In any event, it had to be removed from the place where it crashed in order to make repairs. This expense fell upon the insured and was not covered by the policy.
 
 
 30
 Smith contends that the court erred in denying plaintiffs "the decision of the jury on the pleadings and the evidence as presented at the trial." The contention is that for whom White acted in approving the change of pilot from Frank Mettner to Raymond Linker should have been decided by the jury rather than the judge, as also should have been the question of whether there was a waiver by Orion of the right to insist on the insured named pilot provision. This is a restatement of issues raised in previous assignments which have been considered in other portions of the opinion and need no further amplification.
 
 
 31
 Finally, in the third cause of action, recovery is sought against White personally on the ground that he was advised of a change in pilot to fly the "helicopter" and negligently failed to advise Cravens and Orion. What we have already said, disposes of this contention. All White could have advised Cravens and Orion was that at some time in the near future Smith intended to change pilots from Mettner to Linker. Even if such information had reached Orion, it could not have changed the policy until it had been advised by Smith of the date when Mettner was to quit and Linker was to take over and ask that such change be made in the policy at that time. No such information was ever given to anyone.
 
 
 32
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Herein called Orion
 
 
 [2]
 Herein referred to as Cravens
 
 
 [3]
 Such policies may be referred to as named-pilot policies
 
 
 [4]
 Smith's Testimony
 "Well, I told him [White] that Frank [Mettner] was going to leave and that we had another pilot in mind to fly the helicopter, Ray Linker, and the thing that I wanted to clear was the fact that Ray didn't have his commercial certificate with a number on it, his commercial pilot certificate, that he had recently been discharged from the Army as a helicopter pilot and had applied for his, and passed his examination for his commercial license and had a temporary commercial license, but the temporary permit doesn't have your permanent number on it and I wanted to clear this fact, that he would be flying the helicopter on the temporary permit. So he advised me or told me that that was fine, asked me how many hours he had and I told him that he had about 700. I think 700-some hours, 725 hours, approximately 700 hours, and he told me that the only — as far as the insurance coverage was concerned, the only time the helicopter wouldn't be covered was if we went on any voluntary rescue missions back in those mountains. In fact, he pointed out then a case that had happened recently where — in California where a little girl had been lost up in the mountains and the Air Force had gone in there trying to pick her up and smashed up a helicopter. He used that as an example of the type thing that would jeopardize our insurance coverage, but other than that he said that as far as Ray flying the airplane, that it was perfectly all right."