THOMAS J. PLUHACEK AND JEANNE M. PLUHACEK, APPELLANTS,
v. NEBRASKA LUTHERAN OUTDOOR MINISTRIES, INC., APPELLEE.
420 N.W.2d 286

Filed March 11, 1988.    No. 86-439.

David J. Lanphier of McGill, Koley, Parsonage & Lanphier, P.C., for appellants.

Larry R. Forman of Schmid, Ford, Mooney & Frederick, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This case arises out of a controversy concerning an alleged contract for the sale of land. The property involved is a 100-acre tract of land in Douglas County, Nebraska, located near west Q Street and the Elkhorn River.

The owner of the property, the defendant, Nebraska Lutheran Outdoor Ministries, Inc., listed the property for sale in 1985. The original listing price was $210,000. On April 17, 1985, the listing price was reduced to $195,000; on July 22, 1985, it was reduced to $175,000. In January 1986, the listing price was reduced to $155,000.

The plaintiff Thomas J. Pluhacek is a licensed real estate agent. On March 2, 1986, the plaintiffs submitted an offer to purchase the property for $110,000, subject to their ability to obtain an $88,000 conventional mortgage.

In a conference call on March 5, 1986, the executive director

and executive committee of the defendant considered the plaintiffs' offer. The committee decided to submit a counterproposal subject to the following conditions: the offer must be a cash offer not contingent upon the buyers' obtaining a loan; the earnest deposit must be increased to $5,000; the seller was to retain the insurance proceeds resulting from a fire on February 7, 1986; the 1985 taxes were to be prorated; and "[a]cceptance [was] subject to full Board of Directors approval on March 17, 1986." The conditions were written on the uniform purchase agreement form on which the plaintiffs' offer had been submitted, in the following language:

> Except offer to be CASH (No loan contingency); Earnest Deposit to be raised to $5,000; Sellers to retain any insurance proceeds as a result of the fire on or about February 7, 1986, 1985 taxes that are payable in 1986 are to be prorated and treated as though all are current taxes. This contract is subject to the full Board of Directors approval of the Nebraska Lutheran Outdoor Ministries on or before March 17, 1986.

The acceptance was then signed by the president of the defendant, and the document was returned to the plaintiffs.

On March 7, 1986, the plaintiffs added the following language to the agreement and signed their names: "We have read, understand and accept the terms and conditions of the above offer." The document was then returned to the defendant's real estate agent.

On March 10, 1986, the plaintiff Thomas Pluhacek delivered a $5,000 check to the office of the plaintiff's real estate agency for the earnest money.

On the following day, a news article appeared in the Omaha World-Herald stating that the defendant had a signed contract to sell the property. The article further stated that the board would act on the offer March 17. After seeing the article in the paper, the defendant's agent notified it that the article might stimulate interest in the property and generate additional offers.

On March 13, 1986, the Omaha/Council Bluffs Metropolitan YMCA submitted an offer to purchase the property for $135,000. On March 16, 1986, another offer to

purchase the property, for $140,000, was submitted, by Eric Petersen and Peter Bristol.

The defendant's board of directors met on March 17, 1986, considered the three offers to buy the property, and accepted the YMCA offer.

This action was commenced on March 18, 1986, to compel specific performance of the plaintiffs' alleged contract to purchase the property. The trial court found that approval of the contract by the full board of directors of the defendant was a condition precedent to the formation of a contract and that the defendant acted in good faith, and dismissed the petition. The plaintiffs have appealed.

"[A]n action for specific performance is an equitable matter triable de novo on appeal to this court." *Pallas v. Black*, 226 Neb. 728, 733, 414 N.W.2d 805, 809 (1987); *III Lounge, Inc. v. Gaines*, 217 Neb. 466, 348 N.W.2d 903 (1984); Neb. Rev. Stat. § 25-1925 (Reissue 1985).

> As such, we try the factual issues presented de novo on the record and reach a conclusion independent of the findings of the trial court, provided that where the credible evidence is in conflict on a material issue of fact, we consider, and may give weight to, the fact the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Pallas, supra* at 733, 414 N.W.2d at 809; *Johnson v. NM Farms Bartlett*, 226 Neb. 680, 414 N.W.2d 256 (1987); *Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 410 N.W.2d 494 (1987). "[W]e are obligated to reach our own independent conclusions on the questions of law presented." *Pallas, supra* at 733-34, 414 N.W.2d at 809; *OB-GYN v. Blue Cross*, 219 Neb. 199, 361 N.W.2d 550 (1985); *In re Estate of Corrigan*, 218 Neb. 723, 358 N.W.2d 501 (1984).

The threshold issue in a specific performance case is whether there was a contract. As we stated in *Rybin Investment Co., Inc. v. Wade*, 210 Neb. 707, 709, 316 N.W.2d 744, 745 (1982), "Before a trial court may compel specific performance, there must be a showing that a valid, legally enforceable contract exists." *Panhandle Rehabilitation Center, Inc. v. Larson*, 205 Neb. 605, 288 N.W.2d 743 (1980). Furthermore, "[t]o establish

an express contract, there must be shown what amounts to a definite proposal and an unconditional and absolute acceptance thereof." *Rybin, supra* at 709, 316 N.W.2d at 746; *Reifenrath v. Hansen*, 190 Neb. 58, 206 N.W.2d 42 (1973); *Griggs v. Oak*, 164 Neb. 296, 82 N.W.2d 410 (1957). "The burden of proving the contract is on the party who seeks to compel specific performance." *Rybin, supra* at 709, 316 N.W.2d at 745.

The plaintiffs' offer to purchase the defendant's property was not unconditionally accepted by the defendant. Although four of the conditions were capable of immediate acceptance by the plaintiffs, the final condition, that acceptance of the plaintiffs' offer was subject to full board approval on March 17, 1986, was a contingency to which the plaintiffs could agree, but it prevented a contract from being made until the full board had accepted the offer.

As stated in *Rybin, supra* at 710, 316 N.W.2d at 746:

[A]cceptance of the offer must be an unconditional acceptance of the offer as made, otherwise no contract is formed. There must be no substantial variation between the offer and the acceptance. If the acceptance differs from the offer or is coupled with any condition that varies or adds to the offer, it is not an acceptance, but it is a counterproposition.

The plaintiffs' acceptance of the terms and conditions of the defendant's counterproposal on March 7, 1986, merely expressed their willingness to subject their offer to the five conditions specified.

A contract was not made on March 7, 1986. The condition that the sale was contingent on board approval postponed formation of a contract until March 17, 1986.

Before there could be a contract between the plaintiffs and the defendant for a sale of the property, the board of directors of the defendant had to approve the sale. Because this did not occur, there was no enforceable contract. The plaintiffs have failed to show by clear, satisfactory, and unequivocal evidence that they were entitled to specific performance. *Coniglio v. Hansl*, 220 Neb. 580, 371 N.W.2d 273 (1985); *Tedco Development Corp. v. Overland Hills, Inc.*, 200 Neb. 748, 266

N.W.2d 56 (1978); *Meyer v. Meyer*, 180 Neb. 379, 142 N.W.2d 922 (1966).

The judgment of the district court is affirmed.

AFFIRMED.