A94A0903. CUBA et al. v. HUDSON & MARSHALL, INC. et al.
(445 SE2d 386)

Pope, Chief Judge.

Defendants are auctioneers who conducted an auction of real estate for the Resolution Trust Corporation ("RTC"). Plaintiffs attended the auction and were the high bidder for a particular parcel, Property No. 230. After the bidding was ended by the fall of the auctioneer's hammer, however, plaintiffs were told that the RTC rejected their bid. Plaintiffs sued defendants for damages, and after discovery, plaintiffs and defendants filed cross-motions for summary judgment. The trial court denied plaintiffs' motion and granted defendants', and plaintiffs appeal from both rulings.

The parties essentially agree on the facts. Defendants prepared an auction brochure listing and describing the various RTC properties to be auctioned. Some of the properties were listed with the word "absolute" next to them; others, including Property No. 230, were not. On the back cover, under the heading "AUCTION INFORMATION & TERMS," the brochure stated that properties without "absolute" next to them were being sold with reserve, and that "[f]or property being sold 'With Reserve,' *the highest bid is subject to the approval of the seller.*" (Emphasis supplied.) Defendant Asa Marshall, who conducted the actual auction, stated in his introductory remarks that with respect to those properties being auctioned with reserve, "I can assure you you're not wasting your time. We have officials from RTC all over the country here. The only thing they want to make sure of is that they do have active bidding on those properties auctioned on reserve, and if they do they are going to sell them. I can assure you of that. They are not here to waste your time or to get this property appraised." Immediately following Asa Marshall's introductory remarks, however, another employee of defendant Hudson & Marshall, Inc. got up and pointed out to the audience that the terms of the auction were set forth on the back cover of the brochure. He held up a brochure and showed the audience exactly where the terms and conditions were and then said they would abide by those terms.

1. Plaintiffs first argue that a contract for the sale of Property No. 230 was formed at the time the auctioneer's hammer fell, and that defendant auctioneers are liable for the breach of that contract. As a general rule, even if an auction is with reserve (and all auctions are presumed to be with reserve unless they are expressly stated to be without reserve), the seller must exercise his right to withdraw the property from sale *before* the auctioneer accepts the high bid by let-

ting his hammer fall; immediately after the hammer falls, an irrevocable contract is formed. See *Stanley v. Whitmire*, 233 Ga. 675 (212 SE2d 845) (1975); *Tillman v. Dunman*, 114 Ga. 406, 409 (1) (40 SE 244) (1901); *Coleman v. Duncan*, 540 SW2d 935, 937-938 (Mo. Ct. App. 1976). Compare also OCGA § 11-2-328.[1] Yet at the same time, the seller has the right to establish any terms and conditions for the sale he wishes, and where the seller explicitly reserves the right to reject any bid made, the contract for sale is not formed until the seller actually accepts the bid. *Rountree v. Todd*, 210 Ga. 226 (78 SE2d 499) (1953). We think the only way to reconcile these cases is to recognize, as other courts have, that there is a distinction between auctions which are merely conducted with reserve and those in which the seller explicitly reserves the right to approve, confirm or reject the high bid. *Coleman*, 540 SW2d at 938. ("[S]uch a reservation sets a sale apart from the garden variety of auctions with reserve.") See also *Continental Can Co. v. Commercial Waterway Dist.*, 347 P2d 887 (Wash. 1959); *Moore v. Berry*, 288 SW2d 465 (Tenn. App. 1955); *New York v. Union News Co.*, 118 NE 635 (N.Y. 1917). Where the seller explicitly reserves the right to reject or approve, the auctioneer is without authority to accept for the seller. Thus, the fall of the hammer in such auctions merely ends the bidding, and no contract is formed until the seller actually accepts the high bid. See *Continental Can*, 347 P2d at 888-889; *Moore*, 288 SW2d at 467-468; *Union News*, 118 NE at 636-637.

The seller in this case explicitly reserved the right to reject or approve the high bid in the brochure. And Asa Marshall's "assurance" that all properties would be sold as long as the bidding was active did not modify this reservation since it was immediately followed by the announcement of another speaker who called the bidders' attention to the terms in the brochure and stated that "we will abide by those terms." Accordingly, the fall of the auctioneer's hammer merely ended the bidding and no enforceable contract was formed.

Additionally, we note that even if there were an enforceable contract for the sale of Property No. 230, plaintiffs' remedy would be against RTC; defendants as agents of a disclosed principal would not be liable for the principal's breach of contract. See OCGA §§ 10-6-53; 10-6-87. Plaintiffs' attempt to create a question of fact regarding dis-

---

[1] This statute is part of our codification of Article 2 of the Uniform Commercial Code and thus does not directly apply to auctions of real property. See OCGA § 11-2-102. Courts in other states have recognized that this portion of the Article reflects common law principles applicable to land auctions as well as auctions of goods, however, and have borrowed rules from it or applied it to land auctions by analogy. See, e.g., *Chevalier v. Sanford*, 475 A2d 1148 (Me. 1984); *Hoffman v. Horton*, 186 SE2d 79 (Va. 1972).

closure by stating that Malibu Savings Bank is the true owner of the property fails, as it is clear that RTC controlled the disposition of the property and it cannot be disputed that RTC's role was disclosed.

2. Plaintiffs further contend that if no contract was formed because defendant auctioneers were unauthorized to accept plaintiffs' bid by letting the hammer fall without RTC approval, defendants are liable because they exceeded the scope of their authority. However, this contention presupposes that the falling of the hammer at an auction necessarily forms a contract, and we have held above that it does not where the seller has conditioned the sale on its own acceptance of the high bid.

Nor is there merit in plaintiffs' position that defendants breached their warranty of authority to sell. See *Weinstein v. Rothberg*, 87 Ga. App. 94 (73 SE2d 106) (1952). Although the auctioneer is presumed to have authority to accept the high bid on behalf of the seller if the property is not withdrawn before the hammer falls, that presumption may be rebutted by the seller's express reservation of the right to approve the high bid itself. Cf. *Coleman*, 540 SW2d at 937. In this case, the written terms and conditions in the brochure (and the post-assurance announcement calling attention to those terms and conditions) rebutted the presumption that defendant auctioneers had authority to accept a bid and form a binding contract without the seller's approval. It follows that there was no warranty of authority to sell on the part of defendant auctioneers; and thus there could be no breach of such a warranty.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED JUNE 23, 1994.

*Clifford J. Steele, Anthony A. D'Aurio*, for appellants.
*Westmoreland, Patterson & Moseley, Stewart R. Brown*, for appellees.