KARL F. MARTEN AND ADAM J. MARTEN, APPELLEES, V.
BARBARA A. STAAB AND JUDITH M. MARTEN, COPERSONAL
REPRESENTATIVES OF THE ESTATES OF FRED J. MARTEN AND
RUTHANNA MARTEN, DECEASED, APPELLANTS.

543 N.W.2d 436

Filed February 9, 1996.   No. S-94-621.

Claude E. Berreckman, of Berreckman & Berreckman, P.C., for appellants.

Robert E. Wheeler for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. INTRODUCTION

The defendants–appellants, Barbara A. Staab and Judith M. Marten, copersonal representatives of the estates of their deceased parents, challenged in the Nebraska Court of Appeals the district court's decree of specific performance requiring them to sell certain auctioned lands to their brother, plaintiff–appellee Karl F. Marten, and their nephew, plaintiff–appellee Adam J. Marten, the aforesaid brother's son. In so doing, the personal representatives asserted, among other things, that the district court erred in ruling that (1) the county court probating the estates lacked jurisdiction to confirm the sales and (2) the auction created an enforceable contract. The Court of Appeals reversed the judgment of the district court. *Marten v. Staab*, 4 Neb. App. 19, 537 N.W.2d 518 (1995). We then granted the petition for further review filed by the brother and nephew and now affirm the judgment of the Court of Appeals.

## II. SCOPE OF REVIEW

An action for specific performance sounds in equity. *Winberg v. Cimfel*, 248 Neb. 71, 532 N.W.2d 35 (1995); *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). On appeal from an equity action, the appellate court tries factual questions de novo on the record and, as to questions of both fact

and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995); *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995); *Hlava v. Nelson*, 247 Neb. 482, 528 N.W.2d 306 (1995).

## III. FACTS

The personal representatives obtained an order from the county court probating the estates to sell five parcels of estate land, either at a public auction or a private sale. After advertising and publishing legal notice of the sale, attorney Tedd Huston conducted an auction of the lands at the Thomas County courthouse. On behalf of the brother and nephew, attorney Robert Wheeler recorded the introduction and bidding portions of the auction on audiotape. The tape and transcription of its contents were received in evidence in the proceedings below.

Huston began the auction by reading the legal notice and describing the lands. At that point, the following exchange took place:

> SALE ATTENDEE: You're not going to tie it altogether?
>
> [Huston]: It's going to be sold only by the tracts and we're not going to have one overall bid for all.
>
> [Nephew]: Is this an absolute sale?
>
> [Huston]: This is a sale subject to confirmation by the court, as I just read. It will have to be approved by the county court.

Huston also stated that

> [t]his will be an auction with no protected bids, however, the sale is upon authority of the county court and it will be held open for one hour and will be confirmed by the court which will take approximately 20 to 30 days from the date of the sale to be confirmed by the court.

Huston then proceeded to auction the various tracts of land. For the first tract, Huston stated: "We're going to open the bidding on Tract Number 1 at $200 per acre. That's our starting bid, $200 per acre." The nephew then bid $125 per acre. Huston responded that he could not accept that bid because the opening bid was $200 per acre. The nephew was the only

person at the auction who bid on that particular tract of land.

The remaining tracts of land received similar treatment, with Huston calling for starting bids at a certain price and the nephew, as the only bidder, offering prices below the starting bid requested. A written record of the bids was made, and at the conclusion of the bidding, the following was said:

> [Huston:] These bids have been recorded, they'll be reported to the court and we'll take no further bids. . . . I can assure you that probably the court will not confirm any of these because they are inadequate. If any of you are interested in purchasing any of this property in small tracts that we have here, it can be sold at a private sale and if you are please contact me or one of the [personal] representatives of the estate. . . .
>
> [Wheeler]: Mr. Huston, before you close . . . .
>
> [Huston]: The sale has been open for an hour, and is now officially closed.
>
> [Wheeler]: Mr. Huston, I don't think it's been open an hour from the time you started the bidding[.]
>
> [Huston]: We started at . . . .
>
> [Wheeler]: Well I know that's the time you started, but may I ask you, you had bids and from my understanding it's an absolute sale. Are you then accepting the bids of [the nephew].
>
> [Huston]: First of all, it's not an absolute sale. What we've done, we've posted this, and we've told you several times "These bids will be submitted to the court and the court will either confirm or not confirm[.]"
>
> [Wheeler]: So are you saying you are accepting [the nephew's] bid to submit to the court for confirmation?
>
> [Huston]: It's the only one we have to submit to the court so obviously since we have no other bids. We will submit it.

Huston then called the nephew over to the clerk's table to make the downpayment. Mike Moody accompanied the nephew and presented a check for 20 percent of the bids. There is conflicting testimony, and no taped recording, as to what was said when Moody presented the check. Moody testified that he understood the check would be cashed. However, Howard

Furgeson, the clerk of the auction, and attorney Jason White, who practices law with Huston and attended the sale, testified that Huston stated there had been no sale and had informed Moody that the check would not be cashed.

In any event, Huston thereafter submitted the nephew's bids to the probate court, which refused to confirm the sale. Following the denial of confirmation, Huston returned Moody's check.

## IV. ANALYSIS

Before addressing the assignments of error, an initial question exists with regard to the brother's standing to bring this action.

In order for one to be entitled to invoke a court's jurisdiction, one must have standing to sue, which involves having some real interest in the cause of action; in other words, to have standing to sue, a plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy. The purpose of an inquiry on standing is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995).

The brother claims to have standing based on an option agreement he and the nephew entered into with Moody for the purchase of the subject lands. The option agreement provides as follows:

AGREEMENT FOR OPTION TO PURCHASE
REAL ESTATE

This Agreement made and entered into . . . by and between . . . Moody, hereafter Seller, and [the brother] and [the nephew], hereafter Buyer, jointly or severally.

WHEREAS, Seller and Buyer had on September 29, 1993 made an oral agreement that [the nephew] would bid at the sale of the real property of the Estates of [the personal representatives' parents] . . . for . . . Moody as real purchaser, who would pay the consideration for the purchase, and in whose name the real property would be placed as buyer . . . .

. . . .

NOW THEREFORE . . . Moody does grant to [the brother] and [the nephew] an option to buy the premises on the following terms and conditions which are intended to conform to the terms of the purchase of the real estate by . . . Moody from the Estates of [the personal representatives' parents].

But the brother's rights under the foregoing option agreement are irrelevant to this inquiry, as in this suit his rights depend on the contract which allegedly arose out of the auction of the lands. The only parties to that putative contract are the estates and Moody.

However, because an agent who, on behalf of an undisclosed principal, enters into a contract in the agent's own name is entitled to maintain an action thereon in the agent's own name, the nephew has standing to sue on this putative contract. See Harold G. Reuschlein & William A. Gregory, The Law of Agency and Partnership § 134 (2d ed. 1990). See, also, *Smith v. Orion Insurance Company*, 298 F.2d 528 (10th Cir. 1961); *Baumgartner v. Burt*, 148 Colo. 64, 365 P.2d 681 (1961); *Trust Co. v. Bank*, 255 N.C. 205, 120 S.E.2d 830 (1961).

As the brother was neither a party to the putative contract nor acting as Moody's agent, he has no rights under the putative contract unless he qualifies as a third-party beneficiary thereof. In order for those not named as parties to a contract to recover thereunder as third-party beneficiaries, it must appear by express stipulation or by reasonable intendment that the rights and interests of such unnamed parties were contemplated and provision was made for them. A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee. *Properties Inv. Group v. Applied Communications*, 242 Neb. 464, 495 N.W.2d 483 (1993). See, also, *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994); *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983). Thus, for the brother to qualify as a third-party beneficiary to the putative contract, it must appear that his rights and interests were contemplated by the parties thereto and that provision was made for them.

The rights and interests of third parties are not normally taken into consideration by the seller at an auction; such a seller

is interested only in receiving the highest bid possible from a group of potential buyers. It cannot be said that if the nephew's bid was accepted and therefore a valid contract resulted, the brother's rights and interests were taken into consideration by the estates. Thus, the evidence fails to establish that the brother's rights and interests were contemplated in the putative contract.

As the brother was neither the agent for an undisclosed principal to the putative contract nor a third-party beneficiary thereunder, it necessarily follows that he does not have standing to enforce the putative contract and is, for that reason, not a proper party to this action.

Accordingly, the remainder of the analysis which follows relates only to issues existing between the personal representatives and the nephew.

### 1. Jurisdiction of Probate Court

The personal representatives first assert that the district court erred in holding that the probate court lacked jurisdiction to confirm the sales, thus making confirmation of the putative contract a noncondition.

In common-law and equity actions relating to decedents' estates, the county courts have concurrent original jurisdiction with the district courts. *Iodence v. Potmesil*, 239 Neb. 387, 476 N.W.2d 554 (1991); *In re Estate of Steppuhn*, 221 Neb. 329, 377 N.W.2d 83 (1985). In addition, Neb. Rev. Stat. § 30-2405 (Reissue 1989) provides that "[t]he [county] court has jurisdiction of all proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended and distributed." Clearly, the confirmation of a sale of estate property presents a question of how an estate is to be distributed.

Furthermore, Neb. Rev. Stat. § 30-2465 (Reissue 1989) provides that a personal representative "may invoke the jurisdiction of the [county] court, in proceedings authorized by this [probate] code, to resolve questions concerning the estate or its administration." The comment to that section states in part: "This section is intended to confer authority on the personal representative to initiate a proceeding at any time when

it is necessary to resolve a question relating to administration."

Whether bids at an auction for estate property are sufficient or adequate relates to the administration of the estate. Thus, a personal representative is given the right to invoke the jurisdiction of the county court, and the county court probating an estate does, in fact, possess jurisdiction to hear such questions. Therefore, the probate court here had jurisdiction to confirm or reject the bids made at the auction, and confirmation was a condition to the formation of a contract, not a noncondition, as the district court ruled.

## 2. EFFECT OF AUCTION

The personal representatives next urge that the district court erred in holding that a contract resulted from the auction of the lands.

> Before a court may compel specific performance, there must be a showing that a valid, legally enforceable contract exists. The burden of proving a contract is on the party who seeks to compel specific performance. . . . To establish a contract capable of specific enforcement it must be shown that there was a definite offer and an unconditional acceptance. . . .
>
> A party attempting to enforce a contract, therefore, has the burden of proving there was a definite offer and an unconditional acceptance. Furthermore, for a binding contract to result from an offer and acceptance, it is essential that the minds of the parties meet at every point. Nothing can be left open for further arrangement.

*Satellite Dev. Co. v. Bernt*, 229 Neb. 778, 780–81, 429 N.W.2d 334, 337 (1988). Whether a contract was formed at the auction is a question of law, upon which this court must reach a conclusion independent of the trial court. See, *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995); *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995); *Hlava v. Nelson*, 247 Neb. 482, 528 N.W.2d 306 (1995).

In order to determine whether a contract was formed at the auction, it is necessary to identify the type of auction that occurred. We agree that "[t]here are generally two methods for a seller to offer property for sale at an auction: either 'with

reserve' or 'without reserve.' " *Nicholson v. Clark*, 802 S.W.2d 934, 937 (Ky. App. 1990). See, *Drew v. Deere Co.*, 19 A.D.2d 308, 241 N.Y.S.2d 267 (1963); *Holston v. Pennington*, 225 Va. 551, 304 S.E.2d 287 (1983); *Pitchfork Ranch Co. v. Bar TL*, 615 P.2d 541 (Wyo. 1980); 1 Samuel Williston, A Treatise on the Law of Contracts § 4:9 (Richard A. Lord 4th ed. 1990); 1 Arthur L. Corbin, Corbin on Contracts § 4.14 (Joseph M. Perillo rev. ed. 1993). We also accept that

> [i]n an auction with reserve, the auctioneer, as agent of the seller, invites bids (offers) with the understanding that no bargain exists until the seller has made a further manifestation of assent; the auctioneer may reject all bids and withdraw the goods from sale until he announces completion of the sale.

*Rosin v. First Bank of Oak Park*, 126 Ill. App. 3d 230, 235, 466 N.E.2d 1245, 1249 (1984). Moreover, we adopt the rule that in such auctions, the bidder is deemed to be the offeror, while the auctioneer is the offeree. *Pitchfork Ranch Co., supra.* And we agree as well that "all auctions are presumed to be with reserve unless they are expressly stated to be without reserve." *Cuba v. Hudson & Marshall*, 213 Ga. App. 639, 445 S.E.2d 386, 387 (1994). See, *Coleman v. Duncan*, 540 S.W.2d 935 (Mo. App. 1976); *Drew, supra*; *Holston, supra*; *Pitchfork Ranch Co., supra.*

In an auction without reserve, also known as an absolute auction, *Holston, supra*, the rights and obligations of the parties are different. We further accept that

> [i]n the *no reserves* type of sale . . . . the legal relationship as between the seller and bidder is reversed. In the *no-reserves* sale, the *seller* becomes the offeror and the *bidder* the offeree by reason of a collateral contract theory . . . . [I]n the *no-reserves* auction, the contract is consummated with each bid, subject only to a higher bid being received. This is so because the seller makes his offer to sell when he advertises the sale will be a no-reserves sale to the highest bidder. Once the first bid has been received, the only acceptance which forms a binding agreement is the one offered by the highest bidder. In this type of sale, the seller may not withdraw his

property once any legitimate bid has been submitted, as he may do at any time before the hammer falls in the with–reserves auction. In the no–reserves situation, the seller is absolutely committed to the sale once a bid has been entered, no matter what the level of bidding or the seller's notion of the property's true value. . . .

. . . .

. . . "The words 'without reserve' as used in auctions are words of art, as showing prospective bidders *that the property will actually go to the bidder offering the highest price*, and the seller may not nullify this purpose by bidding himself or through an agent, or by withdrawing the property from sale if he is not pleased with the bids." (Emphasis in original.) *Pitchfork Ranch Co.*, 615 P.2d at 548–49. See, *Wilcher v. McGuire*, 537 S.W.2d 844 (Mo. App. 1976); *Drew, supra*; *Holston, supra*; Harvey Hoshour, *Bids as Acceptances in Auctions "Without Reserve"*, 15 Minn. L. Rev. 375 (1931); 1 Williston, *supra*; 1 Corbin, *supra*; Restatement (Second) of Contracts § 28(1)(b) (1981).

Here, there were no express statements in the advertisements for the auction or at the auction itself which stated that the auction would be without reserve, indicating that the auction was with reserve. See, *Drew, supra*; *Pitchfork Ranch Co., supra*. In addition, Huston stated that there would be a starting bid for each parcel of land. This also indicates that the auction was with reserve. See *Nicholson, supra*. Moreover, the advertisements and the announcement made at the start of the auction stated that the bids were subject to confirmation by the probate court. This, too, indicates that the auction was with reserve. See, *Cuba*, 213 Ga. App. at 640, 445 S.E.2d at 388 ("[w]here the seller explicitly reserves the right to reject or approve, the auctioneer is without authority to accept for the seller"); *Rosin, supra*; *Wilcher*, 537 S.W.2d at 847 ("[t]he provision in the sale bill that the land would sell subject to confirmation by the owner was a recognition of the fact the owner had only authorized a sale 'with reserve' "). Finally, when asked at the auction whether it was an absolute auction, Huston responded that it was not.

While it is true, as the nephew points out, that at the

beginning of the auction Huston stated that the auction was one with no protected bid, Huston testified at trial that his statement meant that the personal representatives were not going to personally bid on the sale. At a hearing prior to the trial, Huston testified that his statement meant that " 'we didn't have anybody that was going to protect the estate at all except the court.' " Allan Woodward, an auctioneer of real estate, testified as an expert that the language "there will be no protected bid" means that the property will absolutely sell to the highest bidder.

Leaving aside the question as to whether Woodward was improperly permitted to testify as to a question of law, see *Sports Courts of Omaha v. Brower*, 248 Neb. 272, 534 N.W.2d 317 (1995), the fact is that under the evidence there are no less than three different possibilities as to what "no protected bid" may have meant. Under that circumstance, it cannot be said that there was an express statement that the auction was without reserve. That fact, coupled with the other evidence on the issue, leads us on our de novo review to conclude that the auction was one with reserve.

As the auction was one with reserve, the nephew as the bidder is the offeror. The question therefore is whether his bids, or offers, were accepted, resulting in a contract for the sale of the lands. In the usual case, the auctioneer is acting as the seller's agent and may accept a bid on behalf of the seller, thus forming a contract. *Coleman v. Duncan*, 540 S.W.2d 935 (Mo. App. 1976). However, "there is a distinction between auctions which are merely conducted with reserve and those in which the seller explicitly reserves the right to approve, confirm or reject the high bid." *Cuba v. Hudson & Marshall*, 213 Ga. App. 639, 640, 445 S.E.2d 386, 388 (1994).

> Where . . . the seller has reserved the right to refuse to accept any bid made, a binding sale is not consummated until the seller accepts the bid. When the seller reserves the right to reject any and all bids received, he may exercise this right even after the auctioneer has accepted a bid.

*Rosin v. First Bank of Oak Park*, 126 Ill. App. 3d 230, 235, 466 N.E.2d 1245, 1249 (1984). See, *Cuba, supra; Coleman,*

540 S.W.2d at 938 (" 'where a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid, and this applies to the auction of public as well as private property' "); *City of New York v. Union News Co.*, 222 N.Y. 263, 118 N.E. 635 (1918); *Eugene Stud & Veneer, Inc. v. State Bd. of Forestry*, 3 Or. App. 20, 469 P.2d 635 (1970); *Moore v. Berry*, 40 Tenn. App. 1, 288 S.W.2d 465 (1955); *Continental Can v. Commercial Etc.*, 56 Wash. 2d 456, 347 P.2d 887 (1959).

As it was here made known both through advertisements and the announcement at the auction that any bids on the lands would have to be confirmed by the probate court, the situation is analogous to reserving a right in the seller to confirm, accept, or reject the bids.

In both the instances of an auction with reserve and one in which the seller has reserved the right to refuse any bid, the acceptance of bids by the auctioneer is not the final act, but, rather, the sale is conditioned on confirmation by another party, in this case the court. Even if Huston accepted the bids, and this is by no means certain, his acceptance would not be enough to form a contract for the sale of the lands. Instead, a contract would only be formed by the occurrence of the stated condition, that is, confirmation by the probate court. See *Pluhacek v. Nebraska Lutheran Outdoor Ministries*, 227 Neb. 778, 420 N.W.2d 286 (1988) (agreement to sell land subject to approval of seller's governing board did not create enforceable contract).

As the probate court rejected the nephew's bids, the condition did not occur, and no contract was formed. The district court therefore erred in failing to dismiss the nephew's petition for specific performance.

## V. JUDGMENT
The judgment of the Court of Appeals is affirmed.

AFFIRMED.