Donaldson (et al., Appellant,) *v.* Andresen.

Argued March 20, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ.

*Alexander H. Hunter,* for appellant.—It was fraud in law for Andresen, defendant, he then being president of the corporation and one of its directors and owning all of the capital stock and the corporation being insolvent, to make money out of the sale of the business and assets of the magazine.

When Andresen sold all the capital stock this carried with it the business and assets of the magazine and is the same thing as the sale of the magazine: R. R. Co. v. Howard, 74 U. S. 392; Johnson v. Canfield, 292 Ill. 101; Sicardi v. Oil Co., 149 Pa. 148; Hopkins v. Johnson, 90 Pa. 69; Page v. Moore, 239 Pa. 285; Pangburn v. Vault Co., 205 Pa. 83; Automobile Securities Co. v. Wilson, 293 Pa. 143, 149; Mount Union Boro. v. Kunz, 290 Pa. 356, 360; Montgomery Web Co. v. Dienelt, 133 Pa. 585, 591; Cochran v. Shelter, 286 Pa. 226; Grafner v. Ry., 207 Pa. 217.

*Wm. G. Bechman,* of *Thompson, Rose, Bechman & Dunn,* for appellee.—The owner or owners of the capital stock of a corporation in Pennsylvania is not the owner of the corporate assets and property of the corporation. Such stockholder or stockholders not only do not own the assets of the corporation, but have not the exclusive

right of the management or control of its corporate affairs: Monongahela Bridge Co. v. Traction Co., 196 Pa. 25; Ambridge Boro. v. Phila. Co., 283 Pa. 5; Com. v. Converting Works, 286 Pa. 545; McMullen v. Westinghouse, 65 Pitts. L. J. 529.

OPINION BY MR. JUSTICE WALLING, May 12, 1930:

In 1925, Brian J. Boshier, Incorporated, was engaged in the publication of a monthly magazine called "Better Busses," at Pittsburgh. The business was unprofitable and became insolvent. Among its largest creditors was Murdoch, Kerr & Company, Incorporated, a printing establishment, whose claim was $6,660, and for whom William M. Hall, Esq., was acting as trustee. In September of that year, the defendant, F. C. Andresen, a publisher of large experience, undertook the rehabilitation of the Boshier Company and tried to place it on a paying basis. About the same time, the Boshier Company was reorganized as the McCracken-Robinson, Inc., with a capital stock of $10,000, divided into one hundred shares of the par value of $100 each. Through ownership of this stock, Andresen had control of the corporation and became its president and one of its directors. With his assumption of the control it was agreed that the corporation should pay Hall, as trustee for creditors, the sum of $200 per month, which was done to the extent of $1,100. Amounts were also paid to other creditors. The name of the magazine was changed to "Motor Coach Transportation" and Andresen traveled extensively to secure advertising and additional subscriptions, but despite his earnest efforts, the business was a failure. In the fall of 1926, after he had expended $2,300 of his own money in traveling and given over a year of his time Andresen informed Hall as trustee and also other creditors that he could not continue the business. He also informed them that there was in New York City a company in charge of Frank Meyers, engaged in the publication of a magazine devoted to mo-

tor-bus transportation, who might desire to take over the Pittsburgh Company. At this time the latter's largest creditor was the Herbich & Held Printing Company, whose claim was $9,000. After some negotiations, Andresen effected a sale of the entire stock of the McCracken-Robinson, Inc., to the New York Company and agreed, in writing, not to enter into any motorbus publishing business in the United States for ten years. As a consideration for this sale and agreement Andresen received $2,000 cash and a note for $1,500, on which he later received $750 as a compromise; so that in all he received $2,750. On the sale of the stock the officers resigned, others were elected and the business of the McCracken-Robinson, Inc., was transferred to New York; but at least for a time the corporate name was not changed. Hall and Held, representing the creditors, were consulted by Andresen about the sale of the stock and consented to the same with the understanding that the New York Company should pay each of them $200 a month, in liquidation of the indebtedness. Held's firm subsequently printed the magazine for one month (December, 1926) and was paid in all $400 by the New York Company, which also made Hall, as trustee, a monthly payment of $200. Thereafter, the New York Company, being financially embarrassed, defaulted and later made the creditors some offer of compromise which was not accepted.

Thereupon, one William D. George, having purchased the Murdoch, Kerr & Company claim, filed this bill in equity, as use-plaintiff, to compel the defendant, Andresen, to turn over to the creditors the $2,750 he received from the New York Company, averring, inter alia, that the sale of his stock was in fraud of creditors; also averring that Hall had consented to the sale of the stock upon the assurance of Andresen that he was getting nothing therefrom. A responsive answer was filed and testimony taken. The chancellor found the facts and legal conclusions and held that Andresen committed no

fraud upon the creditors and recommended a dismissal of the bill. The court in banc, after passing upon the exceptions, entered a final decree to that effect and therefrom the use-plaintiff, George, has appealed.

The case is devoid of equity and the appeal should be dismissed. Andresen's receipt of the $2,750 for the stock and his agreement to refrain from reëntering the business for ten years indicated no wrong on his part. He had received nothing for his work or for the $2,300 traveling expenses. In passing the business on, it was right he should get some compensation. To require him to expend so much time and money in an effort to reëstablish the business and then receive nothing in return is not such a transaction as appeals to a court of equity. While Mr. Hall may be accurate in his testimony that the defendant said he was getting nothing out of the sale to the New York Company, Andresen's testimony is, in effect, that he said he was making no profit out of it, which accords with Mr. Held's recollection. The finding of the court in banc, on a review of the testimony, in which the chancellor joined, is that Andresen said in substance he was making nothing out of the business as a whole, which was certainly true considering the time and money he had invested therein. We cannot disturb the chancellor's findings of the facts on conflicting evidence and approval by the court in banc. See Ambridge Boro. v. Phila. Co. et al., 283 Pa. 5.

In addition, the creditors lost nothing by the sale to the New York Company. McCracken-Robinson, Inc., was hopelessly insolvent, had neither property, good will, nor prospects of any substantial value. Mr. Hall himself said it was a dead horse. Andresen had been unable to pay the creditors anything during his last six months and the little they received from the New York Company was clear gain. The appointment of a receiver in Pittsburgh would have been in vain for there was practically nothing to receive.

Moreover, an officer of a corporation is not precluded from making a bona fide sale of his stock therein. It is a novel proposition in Pennsylvania that the owner of corporate stock is precluded from selling it in good faith merely because he happens to be an officer of the corporation. While the sale of the whole or a majority of the stock carries with it the power of corporate control, yet the assets, good will and franchises continue the property of the corporation, which "is an entity, an existence, irrespective of the persons who own all its stock; and the fact that one person owns all the stock does not make him and the corporation one and the same person": Monongahela Bridge Co. v. Traction Co., 196 Pa. 25; Com. v. Sunbury Conv. Wks., 286 Pa. 545; Ambridge Boro. v. Phila. Co. et al., supra. As Andresen owned the stock, the right to its proceeds did not belong to the creditors. He neither sold the corporate assets nor converted them to his own use. Hence, the rule that a corporate officer may not appropriate the assets of the corporation so as to give him a preference over other creditors has no application. The consideration he received was at least in part for his agreement not to reënter the business. The cases cited by appellant are not parallel to the one at bar, as they rest largely on findings of fraud.

The decree is affirmed and appeal dismissed at the cost of appellant.