# Pitterich v. Styling Technology Corp.

C.P. of Allegheny County, no. GD99-13864.

*David J. Laurent,* for plaintiff.

*Andrew A. Chirls,* for defendant Styling Technology Corp.

*David L. McClenahan,* for defendants Weir.

*William M. Wycoff,* for defendant Katawczik.

WETTICK, *J.,* June 27, 2000—The preliminary objections of defendant Dennis M. Katawczik to Counts V and VI of plaintiff's amended complaint are the subject of this opinion and order of court. The primary issue which this opinion addresses is whether majority shareholders who are also officers and directors of a closely held corporation violate any obligations owed to minority shareholders by bargaining for the transfer of control of the corporation to a third party through a sale of only their stock at a premium price rather than by bargaining for the transfer of control through the sale of the shares

of stock of each shareholder at a lesser price offered to all shareholders. This issue has not been directly addressed by the Pennsylvania appellate courts.

Plaintiff's amended complaint alleges that Fort Pitt Acquisition Inc. is in the business of making and marketing hair care and related products to professional beauty and barber salons. As of August 3, 1998, plaintiff owned at least 4 percent of the outstanding shares of common stock of Fort Pitt and Dennis M. Katawczik, Kevin T. Weir, and Carol M. Weir, defendants, owned or controlled 58.6 percent of the shares of common stock of this corporation.

In April 1998, Graham Webb International Limited Partnership advised Mr. Katawczik and Mr. Weir that it desired to purchase the assets of Fort Pitt. It is alleged that after negotiations, in June or July of 1998, Mr. Weir and Mr. Katawczik orally agreed, on behalf of all the shareholders of Fort Pitt, to sell to Graham Webb all of the stock of Fort Pitt for the sum of $45 million.

Thereafter, defendants repudiated the Graham Webb agreement which included a buyout of all shareholders and, instead, negotiated a stock purchase agreement with another party, Styling Technology Corporation. This agreement benefitted only defendants; under the terms of this agreement, Styling Technology purchased only the stock owned by defendants for $30 million.

## I.

Count V is a breach of fiduciary duty claim against Mr. Weir and Mr. Katawczik. The complaint alleges that they had fiduciary duties as officers, managing directors, and dominant shareholders not to use their corpo-

rate positions for their personal advantage to the detriment of the other shareholders of Fort Pitt. They breached this obligation by repudiating the Graham Webb agreement and negotiating and accepting instead, the Styling Technology agreement which benefitted only themselves as majority shareholders.

Mr. Katawczik seeks dismissal of Count V on the ground that Count V refers only to breaches of obligations that were owed to the corporation. Consequently, any breaches of these obligations may be enforced only through a shareholder derivative action brought on behalf of the corporation pursuant to Pa.R.C.P. 1506.

The standards of care of a director and an officer are set forth at 15 Pa.C.S. §1712 which reads, in relevant part, as follows:

*"(a) Directors.*—A director of a business corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. . . .

*"(c) Officers.*—Except as otherwise provided in the bylaws, an officer shall perform his duties as an officer in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his duties shall not be liable by reason of having been an officer of the corporation."

Under 15 Pa.C.S. §1717 only a shareholder suing on behalf of the corporation may challenge noncompliance with section 1712. The relevant portion of section 1717 reads as follows:

"The duty of the board of directors, committees of the board and individual directors under section 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group."

Count V includes an allegation that defendants, as officers and managing directors, breached fiduciary duties owed to the minority shareholders of Fort Pitt, including plaintiff. Section 1717 does not permit claims raised against defendants, as officers and directors, to be enforced by plaintiff in his individual capacity.

However, Count V also includes an allegation that defendants, as the dominant and controlling shareholders of Fort Pitt, owed fiduciary duties to the minority shareholders of Fort Pitt, including plaintiff. Furthermore, the only alleged wrongdoing described in Count V is the decision that defendants made to sell their stock to Styling Technology rather than to Graham Webb. Plaintiff's claim is that defendants are liable to plaintiff because of their failure to complete a transaction involving a sale of the stock of all shareholders once they were presented with an opportunity to sell only their shares at a higher price.

This alleged wrongdoing does not involve the breach of any duties or responsibilities that defendants owed

the corporation as officers or directors. Officers and directors are responsible only for the management of the business of the corporation; officers and directors have no responsibility with respect to transfers of corporate stock in the absence of bylaw provisions or stockholder agreements governing the sale or other transfer of stock. Consequently, the provisions of sections 1712 and 1717 do not apply to this alleged wrongdoing described in Count V.

The next issue is whether a minority shareholder may bring a lawsuit against majority shareholders because the majority shareholders chose to pursue a transaction that did not involve the sale of the stock owned by the minority shareholders. This issue raises two questions: (1) May minority shareholders sue in their own right for the breach of any duties that the majority shareholders owe to other shareholders in connection with their sale of a controlling share of the stock to a third person? (2) What are the duties, if any, that majority shareholders owe to minority shareholders in connection with the sale of their stock?

As to the first question, to the extent that the majority shareholders owe duties in connection with the sale of their stock to third persons, these are duties owed to the other shareholders—not to the corporation. This is a claim by a minority shareholder against the defendant shareholders for losses that he personally sustained because of an alleged breach of obligations that the defendant shareholders owed plaintiff in his capacity as a shareholder.

Suit cannot be brought on behalf of the corporation because defendants' sale of their stock did not result in

an injury to the corporation. Consequently, a minority shareholder—rather than the corporation—is the proper party to bring a lawsuit based on the breach of these duties. See *Porter v. Healy,* 244 Pa. 427, 91 A. 428 (1914), discussed at pages 66-67 of this opinion; also see discussion of Principles of Corporate Governance: Analysis and Recommendation §5.16 (American Law Institute 1994) at pages 63-66 of this opinion.

In *Tyler v. O'Neill,* 994 F. Supp. 603, 609-610 (E.D. Pa. 1998), *vacated,* 189 F.3d 465 (3d Cir. 1999), the court recognized that an individual stockholder who has pled an injury that he or she suffered has his or her own cause of action. The test is whether an individual shareholder has pled an injury separate and distinct from that suffered by the corporation.

I next consider plaintiff's contention that the controlling shareholders breached obligations owed to plaintiff by passing up a transaction in which the buyer would have bought the stock of every shareholder and by entering into a transaction in which the buyer purchased only the stock of the majority shareholders at a price that included the value of controlling the corporation. Frequently, a person who expresses an interest in "acquiring" a corporation is willing to structure the transaction in whatever manner is acceptable to a majority of the shareholders. The person is willing to "acquire" the corporation (1) by purchasing the assets of the corporation (in which event each shareholder will benefit equally in proportion to his or her ownership interest), (2) by purchasing the stock of all shareholders at the same purchase price, (3) by purchasing the stock of all shareholders and paying a higher price for controlling shares, or

(4) by purchasing only the shares of the majority shareholders.

Defendant states that the law should allow majority shareholders to select any option because under settled law an owner of property (i) cannot be compelled to sell his or her property and (ii) is permitted to sell his or her property on whatever terms he or she wishes. Furthermore, if the law does not permit sales that reflect the value of control, stock will not be transferred by majority shareholders who should be turning over control to others.

Plaintiff, on the other hand, states that "control" over a corporation should not be recognized as property of any shareholder or group of shareholders. It is a corporate asset that belongs to all of the shareholders.

With few exceptions, courts throughout the country have adopted the rule that a majority shareholder who is also a director and an officer may sell his or her property to whomever the shareholder wishes. 12B Charles R.P. Keating and Jim Perkowitz-Solheim, Fletcher Cyclopedia of the Law of Private Corporations §5845 (rev. vol. 1993) (footnotes omitted), summarizes the case law as follows:

"As already detailed in the general discussion of the sale of controlling shares, a majority shareholder is at liberty to dispose of his or her shares at any time and for any price to which such shareholder may agree without being liable to other shareholders as long as that shareholder does not dominate, interfere with, or mislead other shareholders in exercising the same rights. Generally, the mere fact that the majority receives a premium price for its stock is no fraud on the minority. Recognition is

given to the fact that the advantages which flow from control of a corporation may make the price paid for the controlling shares greater than that paid for other shares. So a controlling corporate or individual shareholder may be free to bargain for and receive a premium in the sale of controlling stock so long as the sale does not result in injury to the corporation and does not violate some corporation statute or the federal or state securities laws."

The Delaware courts have adopted this rule. See *Frantz Manufacturing Co. v. EAC Industry,* 501 A.2d 401, 408 (Del. 1985), where the court stated:

"Frantz asserts that EAC and Thomas Rosenow acted improperly when Rosenow's shares were sold to EAC and at the same time Rosenow submitted his resignation to EAC. It is clear of course that as a director, Mr. Rosenow was in a fiduciary relationship with the corporation and its shareholders. However, it is also clear that directors have the right to deal freely with their shares of stock and to dispose of them at the best price they are able to obtain, so long as they are acting in good faith. 3 W. Fletcher, Cyclopedia of the Law of Private Corporations, §900 (rev. perm. ed. 1982); see also, *Wellman v. Dickinson,* 682 F.2d 355 (2d Cir. 1982); *Treadway Co. v. Care Corp.,* 638 F.2d 357 (2d Cir. 1980) (applying New Jersey law). As a general rule, a director has no duty to disclose his stock dealings to the corporation, nor does he have a duty to offer his shares to the corporation before selling them to another. *Treadway* at 377. Directors are also free to resign."

There are two exceptions to the general proposition that a majority shareholder has a right to sell his or her stock to third persons on such terms as the shareholder

selects, both of which are founded in tort law. First, the majority shareholder cannot mislead a minority shareholder. See 12B Fletcher Cyclopedia, *supra.*

Second, the majority shareholder cannot sell control of the corporation to an outsider who will mismanage or loot the corporation. See *e.g., Harris v. Carter,* 582 A.2d 222 (Del. Ch. 1990), where the court adopted what it characterized as the majority view that the controlling shareholders are under a duty not to transfer control to an outsider if the circumstances surrounding the proposed transfer are such as to awaken suspicion and put a prudent person on his or her guard, unless a reasonably adequate investigation discloses such facts as would convince a reasonable person that no fraud is intended or likely to result. This principle, according to the court "arises from the law of torts and not the law of corporations or of fiduciary duties." *Id.* at 808.

Section 5.16 of the Principles of Corporate Governance, *supra* (internal references omitted), addresses the rights and limitations imposed on a controlling shareholder's sale of its stock to a third party:

*"Section 5.16 Disposition of voting equity securities by a controlling shareholder to third parties*

"A controlling shareholder has the same right to dispose of voting equity securities as any other shareholder, including the right to dispose of those securities for a price that is not made proportionally available to other shareholders, but the controlling shareholder does not satisfy the duty of fair dealing to the other shareholders if:

"(a) The controlling shareholder does not make disclosure concerning the transaction to other shareholders

with whom the controlling shareholder deals in connection with the transaction; or

"(b) It is apparent from the circumstances that the purchaser is likely to violate the duty of fair dealing under Part V in such a way as to obtain a significant financial benefit for the purchaser or an associate."

The initial paragraph of section 5.16 "confirms the application of this general rule [that a shareholder has the right to dispose of his or her stock to any third person and on any terms unless the right has been restricted through a bylaw provision or a shareholder agreement] to a controlling shareholder, whether or not the controlling shareholder receives a price that is not made proportionately available to other shareholders, except under the circumstances specified in section 5.16(a) or (b)." *Id.* at section 5.16 cmt. c.

The exception described in section 5.16(a) covers the situation in which the controlling shareholder is dealing with other shareholders in connection with the transaction. This exception normally arises where the purchaser wishes to purchase a larger number of the corporation's shares than the controlling shareholder owns and the controlling shareholder helps to persuade other shareholders to sell their stock on less favorable terms. See *id.* at section 5.16 cmt. d.

The exception described in section 5.16(b) covers the situation in which it should be apparent to the controlling shareholders from the circumstances surrounding the transaction that the purchasing shareholders are going to violate their obligations to the minority shareholders following the acquisition of the stock. See *id.* at section 5.16 cmt. e (citations omitted):

*"(e) Section 5.16(b): likelihood of violation of duty of fair dealing by purchaser of control.* Section 5.16(b) describes a second situation in which the danger of exploitation outweighs the risk of discouraging transfers of control. Section 5.16(b) follows existing case law imposing liability on controlling shareholders who sell control of a corporation, whether or not at a premium, when it is apparent from the circumstances that the purchaser is likely to violate the duty of fair dealing under Part V in such a way as to obtain a significant financial benefit for the purchaser or an associate.

"As a general rule, the primary barrier against self-dealing by the purchaser of control is the fiduciary obligations the purchaser undertakes in connection with an acquisition of control. There are, however, circumstances in which there is both a significant likelihood that the purchaser will violate those obligations and a substantial danger that the violation will be difficult or costly to prove or that the purchaser will not be available to answer in damages following suit by minority shareholders. In that event, potential sanctions against the purchaser are unlikely to deter the undesirable conduct, and the more efficient approach is to prevent the transaction in the first place. In such circumstances, a prohibition on transfer can be most easily effected by imposing liability on the controlling shareholder, who is likely to be in the best position both to evaluate the risk and to prevent the transfer."

The final paragraph of comment e describes restrictions imposed on the bringing of an action based on section 5.16(b):

"As reflected in section 5.16, it is wrong to sell controlling stock when it is apparent from the circumstances

that after obtaining control the buyer is likely to violate the duty of fair dealing under Part V in such a way as to obtain a significant financial benefit. However, if an action could be brought merely on an allegation that the buyer was likely to violate the duty of fair dealing, a trial on the facts might be required in many cases where the principal controverted issue was the buyer's state of mind. Such a result would be undesirable because the uncertainty of outcome would result in an incentive for frivolous litigation. Therefore, the courts should allow an action to be brought against the seller for liability for such a wrong only if the buyer actually breaches the duty of fair dealing or if, after the plaintiff satisfies the normal prerequisites for injunctive relief, the buyer is prevented by injunction or similar action from doing so. In such event, the seller will be liable for damages equal to the greater of the amount of the injury to the corporation or the premium received.

The limited relevant Pennsylvania appellate court case law is consistent with the case law of other jurisdictions and the provisions of section 5.16. In the case of *Porter v. Healy, supra,* 244 Pa. 427, 91 A. 428, the controlling shareholders advised the minority shareholders that they had sold their holdings at $165 per share with the understanding that all remaining shareholders would have the same privilege. In reliance upon this representation, the minority shareholders sold their shares to the purchaser for the same purchase price. Thereafter, the minority shareholders learned that additional money had been paid to the majority shareholders under a secret arrangement that the majority shareholders had not disclosed.

The minority shareholders sued the majority shareholders for their respective portions of the secret pay-

ment. The trial court ruled in their favor and the Pennsylvania Supreme Court affirmed the ruling.

The Pennsylvania Supreme Court permitted recovery only because the purchaser desired the entire stock of the company and the majority shareholders had induced the minority shareholders to sell their shares for $165 per share by falsely representing that this was the full amount that the purchaser was prepared to pay to acquire the entire stock of the company. The court stated:

"If the present case were merely an instance where majority stockholders disposed of their stock and honestly took advantage of the fact that they held a controlling interest in order to gain a higher price than the minority shareholders were subsequently able to secure, and who at the same time incidentally resigned their places as directors, then of course the complainants would not have a good cause of action." *Id.* at 436, 91 A. at 431.

In response to the majority shareholders' contention that there could be no legal recovery by the present plaintiffs in their own individual right, the court stated that "the injury averred was not to the company but to the individual plaintiffs [so that] the court below did not err in holding that plaintiffs had a right to institute and maintain their [own] action." *Id.* at 438, 91A. at 432.

There does not appear to be any cases decided after *Porter* which question the principles upon which the *Porter* case was decided. See *Binns v. Copper Range Co.,* 335 Pa. 257, 6 A.2d 895, 898 (1939) (no fiduciary or confidential relationship arises from the mere fact that an individual shareholder, who is an officer or director, purchases corporate stock because the duty of an officer

or director is owed to the corporate entity and not to the shareholder as an individual); *Donaldson v. Andresen,* 300 Pa. 312, 317, 150 A. 616, 618 (1930) (owner of corporate stock is not precluded from selling it merely because he happens to be an officer of the corporation because, while the sale of a majority of the stock carries with it the power of corporate control, the assets, good will, and franchises continue to be the property of the corporation).

On the basis of the case law as summarized in *Fletcher* and section 5.16, I reject defendant's request that Count V of the amended complaint be dismissed. The controlling issue is whether any allegations in the amended complaint bring plaintiff's claim within an exception to the general rule that majority shareholders may dispose of their stock through a transaction that does not include the purchase of the stock of minority shareholders.[1]

Plaintiff's amended complaint contains allegations that at the time of the stock purchase, Styling Technology's financial health was rapidly deteriorating and that it had issued false and/or misleading financial statements (amended complaint ¶64); circumstances existed that would have alerted defendants that an investigation of Styling Technology should have been made in order to protect the best interests of Fort Pitt and its shareholders (amended complaint ¶64); defendants failed to conduct an adequate investigation into Styling Technology in order to prevent the dramatic diminution in value of Fort Pitt shares or the complete destruction of Fort Pitt's fi-

---

1. While Count V describes the claim as a breach of fiduciary duty, the case law holds that the controlling shareholders owe only a duty of fair dealing to the other shareholders.

nancial well-being (¶65); the shares of the minority shareholders, including plaintiff, were effectively rendered worthless by the transaction (¶66); and Styling Technology was carrying substantial debt and was experiencing financial difficulties (¶39).

In deciding preliminary objections in the nature of a demurrer, a court must construe the complaint in a manner that is most favorable to plaintiff.[2] The allegations described in the above paragraph may bring plaintiff's claim within the exception covering the situation in which the shareholders sold control of the corporation when it was apparent from the circumstances that the buyer would not protect the interests of the minority shareholders.

## II.

I next consider defendant's preliminary objection to Count VI. In Count VI, plaintiff seeks recovery for intentional interference with contractual relations. The claim is based on allegations that Graham Webb had agreed with Mr. Weir and Mr. Katawczik to purchase all of the common stock of Fort Pitt, including the stock of plaintiff, and that Mr. and Mrs. Weir and Mr. Katawczik interfered with a contractual relationship or prospective contractual relationship between Fort Pitt's other shareholders and Graham Webb by selling their stock to Styling Technology.

I am dismissing this count. Plaintiff does not allege that the individual defendants were authorized to sell

---

2. Defendant has not filed a preliminary objection to Count V raising a lack of specificity.

stock which they did not own, so there never was a binding contract between Graham Webb and the minority stockholders. Thus, defendants' decision to sell their stock to Styling Technology did not interfere with an existing contractual relationship between plaintiff and Graham Webb. Also, there was not any tortious interference with a prospective contractual relationship between Graham Webb and plaintiff because it appears that Graham Webb had no interest in purchasing plaintiff's shares if it could not also purchase the shares of the controlling shareholders.

Plaintiff apparently takes the position that Graham Webb's agreement to purchase stock from the majority shareholders and the minority shareholders should be treated as a single transaction. However, the controlling shareholders cannot be liable for interfering with a contract to which they are a party. *Maier v. Maretti,* 448 Pa. Super. 276, 288, 671 A.2d 701, 707 (1995).

Finally, an element of the claim of tortious interference with a contract is the absence of privilege or justification on the part of the defendant. A shareholder is free to sell his or her stock to whomever the shareholder wishes; consequently, the controlling shareholders were entitled to further their own separate interests by selling their stock through a transaction more favorable to the controlling shareholders.

For these reasons, I enter the following order of court:

## ORDER

On June 27, 2000, upon consideration of the preliminary objections of Dennis M. Katawczik to Counts V and VI of plaintiff's amended complaint, it is hereby ordered that:

(1) defendant's preliminary objections to Count V are sustained to the extent that Count V seeks recovery based on defendant's conduct as a director or officer of Fort Pitt Acquisition Inc.;

(2) defendant's preliminary objections to Count V are overruled to the extent that the complaint seeks recovery based on defendant's breach of the duty of fair dealing described in the opinion accompanying this order of court; and

(3) defendant's preliminary objections to Count VI are sustained and this count is dismissed.